2022 IL App (1st) 210618

No. 1-21-0618

Third Division
November 30, 2022

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| THOMAS PALARZ, | ) | |
| | ) | No. 2019 D 530016 |
| Petitioner-Appellant, | ) | |
| | ) | The Honorable |
| and | ) | John T. Carr, |
| | ) | Judge Presiding. |
| JOLANTA PALARZ, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1   In the instant appeal, petitioner, Thomas Palarz, raises two claims of error. First, Thomas challenges a series of orders that extended an emergency order of protection brought against him by respondent, his wife, Jolanta Palarz, pursuant to the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/101 *et seq.* (West 2018)) for over two years. Second, Thomas appeals from an allocation judgment order entered pursuant to the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West

2018)) that restricted Thomas's parenting time with the parties' then six-year-old child, G.P., to supervised visitation. For the reasons that follow, we lack jurisdiction to review Thomas's challenge to the extensions of the emergency order of protection and affirm the trial court's allocation judgment order restricting Thomas's parenting time to supervised visitation.

¶ 2                                    BACKROUND

¶ 3        Thomas and Jolanta were married on September 25, 2012. One child, G.P., was born to the marriage on January 17, 2013. On January 7, 2019, Jolanta filed a *pro se* petition for an emergency order of protection against Thomas, listing herself and G.P. as protected parties. In the petition, Jolanta detailed erratic behavior by Thomas, including threats of violence and verbal abuse against Jolanta, Thomas's involuntary commitment to a psychiatric facility, and Thomas's stalking of Jolanta upon his release. The trial court entered the requested emergency order of protection and continued the matter for a hearing on January 28, 2019. Thomas was ordered to have no contact by any means with Jolanta or G.P. and was denied visitation with G.P.

¶ 4        The following day, on January 8, 2019, Thomas filed several *pro se* petitions in the trial court, including (1) a petition for dissolution of marriage; (2) a petition for order of protection against Jolanta, which listed only G.P. as a protected party; and (3) a motion for parentage and physical custody of G.P. On January 11, 2019, Thomas also filed a motion to vacate Jolanta's January 7, 2019, emergency order of protection and sought visitation with G.P. In support of these petitions, Thomas alleged that Jolanta forbade him from seeing G.P. since January 5, 2019, that she filed a false report leading to his hospitalization, and that Jolanta was unstable.

¶ 5        On January 16, 2019, the pending matters between the parties were consolidated, and on Thomas's motion, the trial court advanced the hearing on the January 7, 2019, emergency order

of protection to January 23, 2019. Both parties obtained counsel. At the January 23, 2019, hearing, the trial court granted Jolanta leave to amend her petition for order of protection and issued an order extending the January 7, 2019, emergency order of protection to March 1, 2019.

¶ 6　　　　On February 13, 2019, Jolanta filed an amended petition for order of protection. Jolanta's amended petition incorporated her prior allegations and included an affidavit in which she alleged further misconduct by Thomas dating back to 2008. In sum, Jolanta alleged that Thomas suffered from a mental illness and refused treatment, that he abused alcohol, made false allegations to the police and child services regarding Jolanta, and that she felt unsafe around him. The petition also detailed the events leading to a prior order of protection that Jolanta obtained against Thomas in 2015. On the court's order in that matter, Thomas was required to undergo counseling. Jolanta alleged that when she attended one of Thomas's court-ordered counseling sessions, she learned he had received a bipolar diagnosis.

¶ 7　　　　On March 1, 2019, the parties returned to court and the trial court appointed a guardian *ad litem* to represent the best interests of G.P. in the proceedings. The trial court also entered an agreed disposition order that extended the January 7, 2019, emergency order of protection to April 25, 2019, and set a hearing on the order of protection for that date. The court's order permitted supervised visitation between Thomas and G.P. on Wednesdays from 4:30 p.m. until 7 p.m.

¶ 8　　　　On April 25, 2019, the guardian *ad litem* filed a report in which she detailed her interviews and observations of both parties. Although the report is not included in the record on appeal, the record reflects that the guardian *ad litem* ultimately recommended that Thomas obtain an alcohol and drug treatment evaluation and that his parenting time remain supervised. At the

3

status hearing regarding the guardian *ad litem*'s report, the trial court extended the January 7, 2019, emergency order of protection to July 8, 2019, and set a hearing for that date.

¶ 9 When the parties came before the court on July 8, 2019, the trial court extended the January 7, 2019, emergency order of protection to August 20, 2019. On August 20, 2019, the emergency order of protection was again extended to December 10, 2019, and thereafter extended to December 11, 2019. On December 11, 2019, the trial court ordered reunification therapy between Thomas and G.P. and set forth a holiday parenting schedule. The trial court also extended the January 7, 2019, order of protection to April 20, 2020, and set a hearing for that date.

¶ 10 Due to the COVID-19 pandemic, the April 20, 2020, hearing was continued, and no hearing was held until September 18, 2020. On September 18, 2020, the trial court entered an order *nunc pro tunc* to April 9, 2020, that extended the January 7, 2019, emergency order of protection to January 25, 2021. The trial court also issued an agreed order in the dissolution action setting a case management conference for November 9, 2020, and a trial for January 25 and 26, 2021.

¶ 11 On October 15, 2020, Thomas's counsel filed a motion to withdraw, which the trial court granted on November 9, 2020. Thomas was given 21 days to obtain new counsel or file a *pro se* appearance.

¶ 12 On December 2, 2020, Jolanta filed a counterpetition for dissolution of marriage and an emergency motion to suspend Thomas's parenting time. The motion to suspend parenting time alleged, among other things, that Thomas had videorecorded remote court proceedings, had referred to his former counsel as "homicidal," and that the former supervisor who had been supervising Thomas's parenting time no longer felt comfortable continuing in that role due to

Thomas's behavior towards her. Jolanta's motion attached correspondence from the guardian *ad litem* in which the guardian *ad litem* advised that Thomas's parenting time be suspended until a new supervisor could be appointed. On December 3, 2020, the trial court issued an order temporarily suspending Thomas's parenting time that stated that the court would revisit the matter once the court approved a new supervisor. The trial court also ordered a reunification therapist to issue a report opining on whether Thomas may pose a serious endangerment risk to G.P.

¶ 13     On December 18, 2020, Jolanta filed a pretrial motion for default in the dissolution action, arguing that Thomas had not secured counsel or entered a *pro se* appearance within 21 days as required, had not complied with pretrial discovery deadlines, and should therefore be barred from presenting evidence at trial.

¶ 14     At the time of trial, on January 25, 2021, Thomas was still not represented by counsel. However, on that date, the parties presented a previously negotiated marital settlement agreement that resolved all dissolution matters between the parties except for the allocation of parental responsibilities. The trial court entered a judgment for dissolution of marriage that incorporated the parties' marital settlement agreement and thereafter proceeded to an evidentiary hearing on the issue of allocation of parental responsibilities. The trial court denied Jolanta's motion for default, stating that the court would "give [Thomas] an opportunity to present whatever he has to present," because the court was "doing this for the best interest of the minor child" and would therefore "like to hear from the father."

¶ 15     At the January 25-26, 2021, evidentiary hearing, the trial court heard testimony from Jolanta, the guardian *ad litem*, and Thomas. Jolanta testified that, consistent with the allegations she made in support of her petition for protective order, Thomas had consistently

exhibited erratic behavior, was verbally abusive toward her, and abused alcohol. She further testified that Thomas behaved this way in front of G.P. and disparaged Jolanta to G.P. by telling G.P. that Jolanta was not a good mother, that Jolanta was the source of the family's financial problems, and that Jolanta was "sick in the head." According to Jolanta, G.P. expressed to her on numerous occasions that she was afraid of her father and did not express a desire to be with him. Jolanta testified that Thomas had issues with sleeping and grooming, and that he would frequently drink to excess, leading to arguments. Moreover, Jolanta testified that Thomas suffered from a mental illness but refused to consistently take medication for his disorder and detailed an incident in 2018 in which Thomas's behavior was so concerning that Jolanta and Thomas's family made the joint decision to drive him to a hospital for mental health treatment. Thomas did not agree to go voluntarily, attempted to escape the vehicle, and struck Jolanta with his phone.

¶ 16 The guardian *ad litem* testified that Thomas admitted to her that he had been diagnosed with unspecified bipolar disorder and that a psychiatrist's report she reviewed indicated that he had taken medication for his disorder in the past but discontinued it earlier in the year. The guardian *ad litem* also testified concerning the events that led her to previously recommend that Thomas's parenting time be suspended, including threatening behavior he had exhibited toward the appointed supervisor, his disparaging comments to Jolanta and her counsel, and a citation for driving under the influence that Thomas received in November 2020. She further testified that she believes Thomas has mental health difficulties that he has attempted to address at certain times, but that he has not always been successful and that his behavior has upset G.P. greatly. Ultimately, the guardian *ad litem* recommended that Jolanta be responsible for decision making concerning G.P. and indicated that she needed more information regarding

whether Thomas was routinely taking his medication before she could recommend anything other than supervised visitation.

¶ 17     Jolanta called Thomas as an adverse witness. He testified that, in November 2020, he received a citation for driving under the influence of alcohol when he was in an accident in which his vehicle was totaled. However, he testified that Jolanta's testimony concerning his excessive drinking was not correct. Thomas testified that Jolanta had been aggressive with G.P. and only sought an order of protection against him as a divorce tactic.

¶ 18     Before Thomas presented his case-in-chief, he made an oral motion that the court continue the hearing so that he could issue a subpoena to his treating psychologist, who, according to Thomas, had informed Thomas that he would not be able to testify without a subpoena due to his status as a mental health professional. The trial court denied the motion. In Thomas's case-in-chief, he testified that he had no intention of ceasing his mental health treatment and explained that he had been treated by a number of mental health professionals and was still being treated by them. He testified that he was taking medication for anxiety but that he questioned his bipolar diagnosis and had ceased taking his medication for that disorder for a period of time at the instruction of one of his doctors. He testified that he runs his own company but was also taking classes to become an emergency medical technician and hoped to find other part-time employment and one day join the Air Force. He testified that he would like to continue to co-parent with Jolanta and be in G.P.'s life as much as possible.

¶ 19     On January 29, 2021, the trial court made oral findings and a ruling on the record. The trial court began by stating that it had considered the testimony and evidence presented at the evidentiary hearing, as well as the statutory factors regarding parental responsibilities and parenting time. See 750 ILCS 5/602.7 (West 2018). The court further explained that in order

7

to deviate from standard visitation, the Marriage Act requires a finding that Thomas engaged in conduct that seriously endangers G.P.'s mental, moral, or physical health. See 750 ILCS 5/603.10 (West 2018). Applying these standards to the evidence before him, the trial court found Jolanta's testimony to be credible and Thomas's testimony not to be credible. Specifically, the court found that Thomas had testified inconsistently with regard to his alcohol use. The trial court found that the evidence of Thomas's alcohol use, which led to a citation for driving under the influence, supported a finding of serious endangerment to G.P. The trial court also considered the recommendation of the guardian *ad litem* that it was in G.P.'s best interests for Thomas's parenting time to be supervised due to his alcohol use and the erratic behavior he displayed to the guardian *ad litem* during the course of the litigation. The trial court also referenced Thomas's mental health struggles as a basis for his ruling. He noted that Thomas's mental health was "something that he has to work to change or alleviate the possibility that it's going to affect the child" and advised that if Thomas demonstrated efforts to attend to his mental health difficulties by completing reunification therapy, attending counseling, and receiving a report from a treating psychologist that he no longer posed a danger to G.P., Thomas could return to court to seek a modification of the order allocating parental responsibilities. The trial court instructed the guardian *ad litem* to draft an order reflecting the court's oral ruling for the court's review.

¶ 20    On April 30, 2021, the trial court entered an allocation judgment order that stated, among other things, that Thomas "has engaged in conduct that seriously endangers the minor's mental, moral, or physical health" and that "it is in the minor's best interest that [Thomas] shall continue to have supervised parenting time." This appeal follows.

8

¶ 21                                                     ANALYSIS

¶ 22            On appeal, Thomas appears to challenge all of the trial court's orders having the cumulative

effect of extending the January 7, 2019, emergency order of protection through January 25,

2021, and also challenges the portion of the April 30, 2021, allocation judgment order that

restricts Thomas's parenting time to supervised visitation. Specifically, with regard to the

emergency order of protection, Thomas argues that "each and every one" of the extensions

"were never agreed to by the parties and there was no finding by the court that appropriate

circumstances existed" to extend the emergency order of protection and, therefore, the orders

are void because they "overwhelmingly exceeded the trial judge's authority." Regarding the

trial court's allocation judgment order, Thomas argues that the trial court's evidentiary rulings

denied Thomas due process and that the court's endangerment finding—and resulting

restriction of parenting time to supervised visitation—was against the manifest weight of the

evidence.

¶ 23            We begin with the issue of our jurisdiction. Although the parties do not contest our

jurisdiction over the instant appeal, the appellate court has an independent duty to consider its

jurisdiction. See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213

(2009); *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67.

Thomas maintains we have jurisdiction to consider his claims pursuant to Illinois Supreme

Court Rule 303 (eff. July 1, 2017), which governs appeals from final judgments. We agree

with Thomas that the April 30, 2021, allocation judgment order is a final and appealable order

and that Thomas filed a notice of appeal within 30 days of April 30, 2021. Accordingly, Rule

303 provides us with jurisdiction to consider his challenge to the April 30, 2021, allocation

judgment order.

9

¶ 24    However, we find Thomas's challenge to the trial court's orders extending the January 7, 2019, emergency order of protection, which expired by its own terms on January 25, 2021, to be moot. "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006). "The existence of a real dispute is not a mere technicality but, rather, is a prerequisite to the exercise of this court's jurisdiction." *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005).

¶ 25    In the case at bar, Thomas's challenge concerning the trial court's extensions of the emergency order of protection is moot because the emergency order of protection is no longer in effect, and therefore, even an appellate court order reversing the January 7, 2019, emergency order of protection and each of the trial court's extensions of that order would be incapable of providing Thomas any relief. See, *e.g.*, *Hedrick-Koroll v. Bagley*, 352 Ill. App. 3d 590, 592 (2004) ("Because the emergency order of protection expired and was replaced by the plenary order of protection, and because the plenary order of protection expired on January 1, 2004, the issues respondent raises on appeal are moot."); *Moseley v. Goldstone*, 89 Ill. App. 3d 360, 365-66 (1980) ("[T]he issue of visitation during the pendency of the action is moot because nothing can be done to remedy the denial of visitation for a time period which has already passed; consequently, no useful purpose can be served in considering the denial of the specific visitation requests."); *Maroney v. Maroney*, 109 Ill. App. 2d 162, 167 (1969) ("The question of the propriety of the temporary order is now moot. The temporary order has been superseded by the permanent order entered by the court ***.").

¶ 26        While not addressing the issue of mootness in his appellate brief, Thomas's notice of appeal submits that we have jurisdiction to consider the orders extending the January 7, 2019, emergency order of protection because they are "steps in the procedural progression to the final order appealed." See *In re F.S.*, 347 Ill. App. 3d 55, 69 (2004) ("[I]t is appropriate to retain our jurisdiction to review [an] unspecified judgment 'if it is a "step in the procedural progression leading" to the judgment specified in the notice of appeal.' [Citations.]"). We are not persuaded by Thomas's argument. Here, we cannot find that the orders extending the January 7, 2019, emergency order of protection were steps in the procedural progression leading to the entry of the April 30, 2021, allocation judgment order, because the allocation judgment order was not dependent on any prior order of protection but was instead entered after an evidentiary hearing on the issue of parental responsibilities. In other words, the court's temporary extension orders, even if improperly entered, would not have had an effect on the final judgment allocating parental responsibilities and would not render that judgment void. See *Jiffy Lube International, Inc. v. Agarwal*, 277 Ill. App. 3d 722, 727 (1996) (finding that "[w]here an order has the possibility of rendering all subsequent orders void, then we find that such an order is a step in the 'procedural progression' leading to the order specified in the notice of appeal"); *In re A.N.*, 324 Ill. App. 3d 510, 512 (2001) (reviewing court had jurisdiction to review motion to substitute judge where, had the motion to substitute judge been granted, judge would not have retained position to rule on the motion specified in the notice of appeal).

¶ 27        In the case at bar, any findings made in support of the orders extending the emergency order of protection were not binding on the trial court, and the trial court's entry of those orders, even if improper, would not have divested the trial court of authority to issue the allocation judgment order appealed from. Moreover, the trial court was statutorily required to conduct an

11

evidentiary hearing regarding the final allocation of parental responsibilities *de novo*, considering all of the factors that relate to the best interests of the child. See *In re Marriage of Fields*, 283 Ill. App. 3d 894, 902 (1996); 750 ILCS 5/602.5(a) (West 2018); 750 ILCS 5/602.7(a) (West 2018). While the record reflects that the trial court considered evidence that previously supported the entry of the January 7, 2019, emergency protective order, the April 30, 2021, allocation judgment order is independent of those orders. Accordingly, because the extensions of the January 7, 2019, emergency order of protection were not steps in the procedural progression leading to the order on appeal and are also moot, we lack jurisdiction to consider Thomas's challenge concerning them.

¶ 28 Having found we lack jurisdiction over Thomas's first claim of error, we turn to the merits of Thomas's challenge to the April 30, 2021, allocation judgment order itself, which restricted Thomas's parenting time to supervised visitation. The Marriage Act provides that a trial court may order parenting time to be supervised, if "[a]fter a hearing," the trial court finds "by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development." 750 ILCS 5/603.10 (West 2018). Because the trial court is in the best position to assess the credibility of witnesses and determine the child's best interests, its decision regarding the allocation of parenting time must be accorded great deference. *In re Marriage of Debra N.*, 2013 IL App (1st) 122145, ¶ 45. We will not overturn the trial court's decision regarding the allocation of parental responsibilities unless the court abused its considerable discretion, or its decision is against the manifest weight of the evidence. *In re Marriage of Debra N.*, 2013 IL App (1st) 122145, ¶ 45. "A judgment is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent." *In re Parentage of J.W.*, 2013

12

IL 114817, ¶ 55. "In determining whether a judgment is contrary to the manifest weight of the evidence, the reviewing court views the evidence in the light most favorable to the appellee. [Citation.] Where the evidence permits multiple reasonable inferences, the reviewing court will accept those inferences that support the court's order." *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004).

¶ 29     Thomas maintains that the trial court's decision to restrict his parenting time to supervised visitation was erroneous because, according to Thomas, the trial court held him in default, refused to admit or hear evidence from Thomas's treating psychologist, and relied exclusively on evidence of Thomas's misconduct occurring over two years before the evidentiary hearing. Thomas further maintains that there was no evidence that Thomas ever abused, neglected, or consumed alcohol in front of G.P. and that the trial court failed to consider that, at the time of the hearing, Thomas was employed, had completed counseling as well as reunification therapy, and was not argumentative. Jolanta responds that Thomas's arguments are directly contradicted by the record and that there was ample evidence in support of the trial court's endangerment finding. We agree that the record rebuts many of Thomas's allegations and that the trial court's endangerment finding was not against the manifest weight of the evidence.

¶ 30     First, as noted, the trial court did not grant Jolanta's motion for default and instead expressly stated that it would permit Thomas to proceed because it believed Thomas's testimony and evidence were important to the court's determination of the child's best interests. Second, the trial court did not refuse to hear evidence from Thomas's treating psychologist. Rather, the trial court appropriately denied Thomas's request to delay the hearing so that Thomas could belatedly issue a subpoena to his treating psychologist, who Thomas was aware would be unable to testify without a subpoena. Third, the trial court did not rely

13

exclusively on evidence of misconduct by Thomas occurring over two years before trial. The trial court's endangerment finding was based in part on evidence of Thomas's alcohol abuse and that Thomas received a citation for driving under the influence of alcohol just two months before the evidentiary hearing. Moreover, the trial court found Thomas's testimony concerning his current alcohol use not to be credible. The trial court's ruling was also based in part on Thomas's erratic behavior, which continued throughout the litigation. Accordingly, although we do not find that the issuance of a citation for driving under the influence is evidence of anything, the other factors listed by the trial court show that Thomas's restricted visitation was justified by all the of the other factors considered by the trial court. Fourth, we reject Thomas's claim that he was employed and nonargumentative at the time of the evidentiary hearing. Thomas testified that his employment with his previous employer had been terminated, and that although he was in the process of starting his own company, he was still seeking part-time or full-time employment in a variety of industries. In addition, the trial court observed that Thomas spoke to Jolanta in a harassing tone in the presence of the court at the evidentiary hearing. Finally, there is nothing in the record to suggest that Thomas completed reunification therapy as he alleges. In fact, the trial court advised that in the event that Thomas completed reunification therapy and provided a written report to the court that unsupervised visitation would not endanger G.P., Thomas could petition for modification of the order allocating parental responsibilities.

¶ 31    As noted, the trial court restricted Thomas's parenting time to supervised visitation based primarily on its finding that Thomas's alcohol use posed a serious endangerment to G.P. This finding was supported by credible testimony from Jolanta that Thomas would frequently drink to excess and become inebriated and was further corroborated by unrebutted testimony from

14

the guardian *ad litem* that Thomas received a citation for driving under the influence. Thomas has provided no authority to suggest that a parent's alcohol use is insufficient to pose a serious endangerment to a child or to restrict parenting time. Indeed, our appellate courts have found the opposite. See *In re Marriage of Oertel*, 216 Ill. App. 3d 806, 817 (1991) (reversing trial court decision and holding father's visitation must be supervised "until he is able to demonstrate to the trial court that he is no longer using alcohol and unsupervised visitation will pose no danger to [the minor]"). Here, the evidence of Thomas's alcohol use did not stand alone but was presented alongside evidence of Thomas's mental health difficulties, erratic behavior, hostile treatment of Jolanta, and the testimony of the guardian *ad litem*. Accordingly, we find no basis to conclude that the trial court's endangerment finding was against the manifest weight of the evidence and affirm.

¶ 32                                                        CONCLUSION

¶ 33          For the reasons set forth above, we cannot consider Thomas's appeal of the trial court's extensions of the January 7, 2019, emergency order of protection and affirm the trial court's April 30, 2021, allocation judgment order.

¶ 34          Affirmed in part and dismissed in part.

---

*In re Marriage of Palarz*, **2022 IL App (1st) 210618**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-D-530016; the Hon. John T. Carr, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James J. Macchitelli, of Schaumburg, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Olga A. Allen, of Hurst, Robin & Kay, LLC, of Chicago, for appellee. |

---