2023 IL App (1st) 210980-U

THIRD DIVISION
March 29, 2023

No. 1-21-0980

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| *In re* FORMER MARRIAGE of <br><br> CLAUDIA MENDOZA, n/k/a CLAUDIA LARKIN, <br><br>    Petitioner-Appellee, <br><br> and <br><br> CHRISTIAN MENDOZA, <br><br>    Respondent-Appellant. | Appeal from the <br> Circuit Court of <br> Cook County <br><br><br> Nos. 15 D 4091 and <br> 15 D 4125 (cons.) <br><br><br> Honorable <br> Renee Goldfarb, <br> Judge Presiding. |

JUSTICE REYES delivered the judgment of the court.
Presiding Justice McBride and Justice Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirming the decision of the circuit court of Cook County to modify a parenting arrangement where the circuit court did not improperly rely on the child representative's position, there was no reversible error based on hearsay, and the decision was not against the manifest weight of the evidence.

¶ 2     Following an evidentiary hearing, the circuit court of Cook County granted the petition of Claudia Mendoza, now known as Claudia Larkin (Claudia), to modify her parenting arrangement with her former spouse, Christian Mendoza (Christian). On appeal, Christian contends that the circuit court erred by relying on recommendations in the position statement submitted by the

child representative appointed pursuant to section 506 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/506 (West 2020)). Christian also argues that the circuit court committed reversible error by allowing the admission of hearsay statements during the hearing and that the manner in which the parenting time was reallocated was against the manifest weight of the evidence. For the reasons discussed herein, we affirm.

¶ 3                                      BACKGROUND

¶ 4                    *Litigation Prior to Judgment of Dissolution of Marriage*

¶ 5       Claudia and Christian married in 2007 and have three sons: Ja.M. (born in 2007); M.M. (born in 2008); and Jo.M. (born in 2010).[1] When the parties separated in 2013, the children resided with Christian. In May 2015, the parties filed cross-petitions for dissolution of marriage; the cases were consolidated. The circuit court entered an agreed order providing "temporary residential possession" of the children to Christian and parenting time to Claudia.

¶ 6       Claudia's parenting time was briefly suspended in July 2015 after Christian alleged that the children were allowed to view inappropriate videos while in her care. The Department of Children and Family Services (DCFS) investigated the allegation, and the circuit court restored Claudia's visitation. The circuit court also appointed Stewart Auslander as child representative for the three children pursuant to section 506 of the Act (750 ILCS 5/506 (West 2014)).

¶ 7       In April 2016, Christian filed a motion for an evaluator pursuant to section 604.10(b) of the Act (750 ILCS 5/604.10(b) (West 2016)). The circuit court denied the motion but appointed a section 604.10(b) evaluator *sua sponte*. Approximately two months later, Claudia filed a petition for rule to show cause, alleging that Christian had failed to pay his share of the evaluator's fee, which delayed the commencement of the evaluation. Claudia asserted that a

---

[1] Claudia also has an older daughter from a prior relationship who is not a part of this appeal.

timely evaluation was necessary, as Christian's girlfriend – with whom he resided – allegedly "punished" the children and interrogated them regarding the activities in Claudia's home. Christian subsequently filed a petition for rule to show cause raising similar allegations, *e.g.*, that Claudia questioned the children regarding his and his girlfriend's activities and punished the children if they did not answer satisfactorily, in violation of court order. Claudia denied the allegations but acknowledged that the children would volunteer information regarding events in Christian's home. Claudia also expressed concern that Christian brought the children to a therapist without first informing her.[2]

¶ 8    The parties filed competing petitions for child support. Claudia also sought temporary maintenance, asserting that she earned approximately $18,000 per year as an emergency medical technician, whereas Christian's annual salary as a firefighter exceeded $106,000.

¶ 9    In March 2017, Christian filed an emergency motion for a temporary restraining order and injunctive relief against Claudia. The children's teachers had relayed that the children exhibited excessive violence toward other students, which Christian believed was a result of their exposure to violent video games, YouTube videos, and online media while in Claudia's care. Pursuant to court order, the parties agreed to monitor the children's use of electronic devices.

¶ 10    Christian subsequently requested termination of his court-ordered temporary contribution to family expenses and an order allowing him to remove Claudia from his health insurance policy. At that point, Claudia was expecting a child with her boyfriend, Dan Larkin (Dan).

¶ 11        *Judgment of Dissolution of Marriage and Subsequent Litigation*

¶ 12    The parties entered into a marital settlement agreement, which was incorporated into the judgment of dissolution of marriage entered on October 20, 2017. The agreement provided, in

---

[2] The record suggests that both petitions for rule to show cause were voluntarily dismissed.

part, that Christian would be the designated custodial parent, and Claudia would have parenting time as set forth in a separate allocation judgment. The parties agreed to reserve the issue of child support.

¶ 13    Christian and Claudia subsequently filed cross-petitions for child support. Christian noted that Claudia gave birth to a daughter two months earlier but had not yet returned to work. He further maintained that Claudia's expenses were covered almost exclusively by Dan, with whom she resided. The circuit court entered an order denying both child support petitions; the order also discharged the child representative (Stewart Auslander) and appointed a parenting coordinator. The following year, Christian filed another petition for child support, again asserting that Claudia is "grossly underemployed."

¶ 14    In January 2019, Christian filed a motion pursuant to section 604.10(a) of the Act, requesting that the circuit court conduct an *in camera* interview of their oldest son, Ja.M., who was then 11 years old; the circuit court denied the motion. Christian also filed a petition to enforce the allocation judgment, wherein he alleged that (a) the children did not complete their homework while in Claudia's care; (b) Claudia's boyfriend Dan threatened him and made degrading comments about him in front of the children; and (c) Claudia confiscated the children's cellphone, preventing their communication with Christian.

¶ 15    In February 2019, Claudia filed a motion for appointment of a child representative, as well as a petition seeking child support. The circuit court entered an order in March 2019 discharging the parenting coordinator and appointing Jennifer Airato (Airato) as the child representative for the three children.[3] Airato apparently conducted multiple meetings and interviews with the parties, their children, and other individuals.

---

[3] Claudia has represented that the circuit court appointed Airato *sua sponte.*

¶ 16    In October 2019, Claudia filed a motion for modification of their parenting arrangement based on a substantial change in circumstances.  She then filed an emergency motion for modification of the parenting schedule in May 2020, seeking a specific change as to Ja.M., who was experiencing mental health issues.  After Claudia filed a second emergency motion, the circuit court ordered that the parties would have equal parenting time in the summer of 2020.

¶ 17                    *Child Representative's Emergency Motion*

¶ 18    In July 2020, Airato filed an emergency motion to modify the order regarding summer 2020 parenting time.  According to the motion, Claudia had informed Airato of the following events.  Ja.M. told Claudia that he did not want to return to Christian's home; Claudia recommended that Ja.M. discuss his concerns with his therapist.  Ja.M. responded that he wished to do so, but Christian's girlfriend Susan Cazares (Suzy) was present during his Zoom therapy session and informed him that he is not allowed to tell the therapist what happens in their home.  Based on this, Ja.M. did not discuss his concerns with his therapist.

¶ 19    According to the motion, during Claudia's parenting time, she initiated communications between Ja.M. and his therapist.  Ja.M. described a heated argument between Christian and Suzy on the prior day.  Ja.M. – who suffered from anxiety and depression – witnessed the argument and began to cry.  Christian and Suzy became angry with Ja.M.  Suzy threatened to report Ja.M. to his therapist, and Christian forcefully pushed Ja.M. against the bathroom wall.  The therapist, as a mandated reporter, reported the incident to DCFS.

¶ 20    The motion stated that Claudia reported the incident to the Chicago police.  While talking to police officers, Ja.M. discussed "mean things" said by Suzy, *e.g.*, "No one likes you." After Claudia returned the children to Christian's residence, she received a call from a police officer directing her to pick up the children "because they were concerned with a victim being in the

care of the accused perpetrator."

¶ 21    The motion further provided that Christian's representations regarding Ja.M.'s mental health were inaccurate.  Christian wanted to move Ja.M. from an outpatient program at Lurie Children's Hospital to a "sub-par" inpatient program based on Ja.M.'s current suicidal ideation. During Airato's investigation, none of the other persons involved with Ja.M. – *e.g.*, his therapist, a Lurie psychologist, the DCFS caseworker, or Claudia – could confirm such ideation.

¶ 22    In an order entered on July 24, 2020, the circuit court transferred the children to Claudia's possession until further order of the court.  Christian's parenting time was to be supervised by Claudia's mother, and Suzy was not permitted to be present or to participate in his phone calls with the children.  The court ordered that both parties would attend weekly therapy and a co-parenting program, that Christian would attend an anger management program, and that Ja.M. would remain in the Lurie outpatient program.  Christian subsequently filed a petition to return the children to his custody and care.

¶ 23    In February 2021, the circuit court entered an order providing that both parties would have unsupervised parenting time.  Claudia's motion to modify their parenting arrangement and Christian's petition for return of the children were scheduled for trial in June 2021.

¶ 24                                        *Trial*

¶ 25    The testimony at trial included the following.  Claudia testified that she married Dan in 2019 and that she has six children: her older daughter, her three children with Christian, and two children with Dan.  Claudia testified that in 2020, Christian began keeping the children from her, particularly Ja.M.  She noticed that Ja.M. seemed anxious and afraid to talk to her.  On one occasion, she received a message from Christian that Ja.M. was taken to the hospital, without any further details.  Claudia learned Ja.M.'s location from his therapist, not from Christian.

¶ 26　Claudia further testified that a DCFS representative came to her home in May 2020 based on a report that Claudia was not giving Ja.M. his medication and that he was having withdrawal symptoms.　She was investigated but not indicated by DCFS.　Claudia originally learned that Ja.M. was placed on an anti-depressant when Christian forwarded a receipt from the pharmacy seeking reimbursement for half of his co-payment.　Claudia testified that Christian did not inform her before bringing Ja.M. to a psychiatrist or before her children's wellness checkups in 2018, 2019, or 2020.

¶ 27　As to the children's current status, Claudia testified that Ja.M.'s therapy sessions had been decreased from weekly to biweekly a couple of months earlier.　According to Claudia, Ja.M.'s anxiety levels were significantly lower and he was "open about his problems" and "able to talk."　The therapist had recently emailed that therapy may no longer be necessary as Ja.M. had reached his therapeutic goals.　Similarly, M.M.'s therapist had reduced the frequency of his sessions and opined that he could "take a break from therapy."

¶ 28　Suzy testified, in part, that she and Christian lived together, and she previously cared for his children when he worked 24-hour shifts as a firefighter.　She acknowledged that she had video cameras recording the interior and exterior of her residence.　Certain recordings revealed that she referred to Claudia as a "b***" in front of the children.　She also acknowledged that she attended anger management classes in August 2020.

¶ 29　Christian testified, in part, that he was not keeping Ja.M. from Claudia in early 2020, but rather Ja.M. was having problems and would not get out of bed.　As to the incident where Ja.M. was taken to the hospital, Christian explained that he did not call Claudia because he was dealing with his son.　Upon questioning by the judge, Christian testified that the children were aware that they were being recorded in his home and described such recording as "typical."　He

acknowledged that Ja.M. was "stable" and "coping better" at the time of trial.

¶ 30    During closing arguments, Christian's counsel argued that "[t]his whole case is all about how Christian didn't communicate enough. But he is trying." Claudia's counsel directed the circuit court to the hundreds of messages exchanged by the parties through a co-parenting smartphone/computer application, stating "you have 896 texts through [the app] where you can see, in isolation, the way Claudia communicates with Christian, and how that is *not* reciprocated back to Claudia." (Emphasis in original.) Airato argued that the children were "thriving" since they were transferred to Claudia's care. She submitted a document entitled "Child Representative's Position Regarding Pending Pleadings/Motions."

¶ 31    The circuit court entered a memorandum opinion and order on July 14, 2021, which modified the allocation judgment. Among other things, the order provides that the children will primarily reside with Claudia, and Christian has scheduled parenting time. Christian filed the instant appeal.

¶ 32                                                ANALYSIS

¶ 33    Christian advances three primary arguments on appeal. First, he contends that the circuit court erred in relying on the child representative's position statement. Christian next argues that he was prejudiced by the admission of hearsay statements. Finally, he contends that the circuit court's decision to transfer primary parenting time from him to Claudia was against the manifest weight of the evidence. Prior to considering Christian's arguments, we address certain preliminary issues.

¶ 34                                          *Preliminary Issues*

¶ 35    As an initial matter, although we recognize that the challenged order did not fully resolve all pending issues between the parties (*e.g.*, attorney fees), we note that the circuit court entered a

finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying enforcement or appeal or both. *In re Marriage of Teymour and Mostafa*, 2017 IL App (1st) 161091, ¶ 41 (requiring adherence to the mandate of Rule 304(a) "that a final order disposing of one of several claims may not be appealed without an express finding that there is no just cause for delay"). Furthermore, Illinois Supreme Court Rule 304(b)(6) (eff. March 8, 2016) provides that a "custody or allocation of parental responsibilities judgment or modification of such judgment pursuant to the [Act]" is immediately appealable even without an express finding under Rule 304(a).

¶ 36   We also observe that this appeal is designated as "accelerated" pursuant to Illinois Supreme Court Rule 311(a) (eff. July 1, 2018), as it involves the allocation of parental responsibilities. Rule 311(a)(5) provides that "[e]xcept for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). While the 150-day period has expired, both Christian and Claudia requested and were granted multiple extensions of time to file their respective briefs. Under these circumstances, we find good cause for issuing our decision after the 150-day deadline. *E.g.*, *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 26. We turn to the merits.

¶ 37                    *Child Representative*

¶ 38   Christian contends that the child representative's position statement violated section 506(a)(3) of the Act and that the circuit court erred by relying on the position statement. According to Christian, the child representative's "recommendations" colored the circuit court's views and prejudiced him in the process.

¶ 39   The Act provides "three separate mechanisms for ensuring that courts adequately consider the interests of minors: a child's attorney, a child representative, and a guardian *ad*

*litem.*" *Nichols v. Fahrenkamp*, 2019 IL 123990, ¶ 17. Section 506(a)(3) provides that a child representative "shall advocate what the child representative finds to be in the best interests of the child after reviewing the facts and circumstances of the case." 750 ILCS 5/506(a)(3) (West 2020). The child representative "shall have the same authority and obligation to participate in the litigation as does an attorney for a party and shall possess all the powers of investigation as does a guardian *ad litem*." *Id.* The child representative is not bound by the child's expressed wishes when determining the child's best interests. *Id.* The role of the child representative has thus been described as a hybrid of a child's attorney and a guardian *ad litem*. *Nichols*, 2019 IL 123990, ¶ 17.

¶ 40    Section 506(a)(3) also provides that "[t]he child representative shall not render an opinion, recommendation, or report to the court and shall not be called as a witness, but shall offer evidence-based legal arguments." 750 ILCS 5/506(a)(3) (West 2020). Although he acknowledges that he did not object during the circuit court proceedings, Christian contends that Airato's written submission of her "position" regarding the pending motions violated the foregoing provision. The contents of Airato's "position" – which detailed the allocation of parental responsibilities, including decision making and parenting time – were included in the circuit court's memorandum opinion and order.

¶ 41    As a threshold matter, we note that the parties have not cited, and we have not located, any Illinois cases which clearly articulate the parameters of "evidence-based legal arguments." In *In re Marriage of Debra N.*, 2013 IL App (1st) 122145, ¶ 55, however, the appellate court contrasted "evidence-based arguments" with "personal opinions." Based on our review of the record, the "position" filed by Airato reflected the results of her investigation and was not merely her "personal opinion." To the extent that the child representative serves as "an arm of the court

in assisting in a neutral determination of the child's best interests" (*Vlastelica v. Brend*, 2011 IL App (1st) 102587, ¶ 23), Airato's written submission was fully consistent with this role.

¶ 42    We further observe that there is no indication that Airato abrogated the decision-making power of the trier of fact or acted in the role of a surrogate judge. *Id.* ¶ 36.  As child representative, Airato served as an advisor to the circuit court, which had the discretion to accept or reject her position.  See *In re Marriage of Wendy L.D.*, 2017 IL App (1st) 160098, ¶ 88.

¶ 43    We are unmoved by Christian's reliance on *In re Marriage of Bhati*, 397 Ill. App. 3d 53 (2009).  The circuit court in *Bhati* denied a party's motion to strike the closing statement of the child representative, finding that the entire argument was evidence-based legal argument.  *Id.* at 66.  The sole sentence struck by the circuit court was "[a]nd I have to ask you on [the child's] behalf because she doesn't have a voice here today, she asks me, to deny the removal." *Id.*  The appellate court affirmed, finding that the child representative's statements regarding the difficulty of establishing a reasonable visitation schedule were "a fair inference from the testimony." *Id.* at 67.  As in *Bhati*, we find that Airato's closing statement and her written submission constituted evidence-based legal argument.  Even assuming *arguendo* that any of her statements could be found to be improper, we find no resulting prejudice to Christian.  We thus turn to the next issue.

¶ 44                                 *Hearsay Issues*

¶ 45    Christian contends that the circuit court committed reversible error by permitting the admission of hearsay evidence of Claudia's communications with Angela Moncada (Moncada), the DCFS caseworker.  Over defense counsel's objection, Claudia testified that in May 2020, Moncada arrived at her home and informed her about a report that Claudia was not giving her son his medication.  Claudia further testified – again over defense counsel's objection – that

Moncada came to her home on July 8, 2020, and stated that another report had been made. According to Christian, the court could infer from the foregoing testimony that Christian was contacting DCFS regarding Claudia, "which would be prejudicial to [Christian]."

¶ 46    Illinois Rules of Evidence prohibit admission of a hearsay statement, defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Unless hearsay falls within a recognized exception, it is inadmissible. *In re M.F.*, 304 Ill. App. 3d 236, 241 (1999).

¶ 47    We initially observe that the circuit court was provided the DCFS reports relating to the parties. The reports detail the allegations, evidence, and recommendations regarding the two incidents. Furthermore, as to the testimony regarding the July 8 matter, the child representative had already stated in her emergency motion that Ja.M.'s therapist – who was a mandatory reporter – had reported the matter to DCFS. Even assuming *arguendo* that Claudia's limited testimony regarding her interactions with Moncada constituted hearsay, the admission of the testimony would not warrant reversal, particularly in the context of these relatively complicated and contentious proceedings. *E.g., In re Marriage of Gustafson*, 187 Ill. App. 3d 551, 556 (1989) (reversing where the improperly admitted testimony was "damning" and "highly prejudicial"). We thus turn to the final issue.

¶ 48                                *Allocation of Parenting Time*

¶ 49    Christian maintains that the circuit court acted against the manifest weight of the evidence in transferring primary parenting time from him to Claudia. According to Christian, such decision was not in the children's best interests. As discussed below, we reject this contention.

¶ 50    Section 610.5 of the Act authorizes the filing of a motion to modify an order allocating parental decision-making responsibilities and parenting time. 750 ILCS 5/610.5 (West 2020). A modification of such an order is warranted only if there has been (1) a substantial change in circumstances and (2) modification is necessary to serve the best interests of the child. *Id.*; *Debra N.*, 2013 IL App (1st) 122145, ¶ 47. In determining the best interests of the child for purposes of allocating parenting time, the circuit court must consider all relevant factors, including those listed in section 602.7(b) of the Act. 750 ILCS 5/602.7(b) (West 2020).[4]

¶ 51    As the circuit court is in the best position to assess the credibility of the witnesses and to determine the child's best interests, its decision regarding the allocation of parenting time must be afforded great deference. *In re Marriage of Palarz*, 2022 IL App (1st) 210618, ¶ 28. Accord *Wendy L.D.*, 2017 IL App (1st) 160098, ¶ 87. "We will not overturn the trial court's decision regarding the allocation of parental responsibilities unless the court abused its considerable discretion, or its decision is against the manifest weight of the evidence." *Palarz*, 2022 IL App (1st) 210618, ¶ 28. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the

---

[4] The non-exhaustive list of relevant factors in section 602.7 of the Act includes the following: the wishes of each parent seeking parenting time; the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to parenting time; the amount of time each parent spent performing caretaking functions with respect to the child the 24 months preceding the petition; any prior agreement or course of conduct between the parents relating to caretaking functions with respect to the child; the interaction and interrelationship of the child with his or her parents and siblings and with any other person who may significantly affect the child's best interests; the child's adjustment to his or her home, school, and community; the child's needs; the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement; whether a restriction on parenting time is appropriate; the physical violence or threat of physical violence by the child's parent directed against the child or other member of the child's household; the willingness and ability of each parent to place the needs of the child ahead of his or her own needs; the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child; and the occurrence of abuse against the child or other member of the child's household. 750 ILCS 5/602.7 (West 2020).

evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 52    The memorandum opinion and order entered by the circuit court in the instant case detailed the facts supporting its finding of a substantial change in circumstances since the allocation judgment entered in 2017. Among other things, the circuit court found that Christian's failure to amicably resolve parenting issues outside of the court process had put unnecessary stress on his relationship with Claudia, which had an adverse effect on the children. The circuit court noted that Ja.M. needed consistent therapy, which he did not receive until April 2020. The circuit court also observed that the messages exchanged by the parties (memorialized in the records on the messaging app) confirmed that Christian failed to consult with Claudia on doctor's visits and extracurricular activities. The circuit court found that Claudia credibly testified that there were wellness checks she did not know about.

¶ 53    In evaluating the best interest of the children, the circuit court expressly considered factors set forth in section 602.7 of the Act. Although the circuit court noted deficiencies in both parties' communications, it found that Claudia would "reach out and seek input" on major decisions from Christian, whereas Christian's communications were sometimes late or non-existent. The circuit court also referenced Ja.M.'s reduced anxiety levels. While Christian posited that the improvement was a result in an increase in the dosage of Ja.M.'s medication, the court found that "the medication, the intense and consistent therapy and primarily living in Claudia's home for the past year must certainly be considered together." The circuit court further noted that although Suzy testified that she did not speak negatively regarding Claudia in front of the children, she was heard on video admitted at trial calling Claudia a "b***" in their presence. The circuit court also observed that Claudia was "home all the time" and resided in a five-bedroom home where the children were "thriving."

¶ 54    Based on the evidence presented in this case, the circuit court's determination that it was in the best interests of the children to award Claudia primary parenting time was not against the manifest weight of the evidence.

¶ 55                                    CONCLUSION

¶ 56    The judgment of the circuit court of Cook County is affirmed.

¶ 57    Affirmed.