2023 IL App (1st) 221039

FIFTH DIVISION

June 16, 2023

No. 1-22-1039

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF BENJAMIN ANDREW, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 14 D3 31099 |
| | ) | |
| JACQUELINE ANDREW, | ) | Honorable |
| | ) | Thomas J. Kelley, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Mitchell and Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1                                              BACKGROUND

¶ 2      This appeal involves the marriage of Benjamin Andrew (Benjamin) and Jacqueline Andrew

(Jacqueline), who divorced in 2014. About six years later, they engaged in extensive motion

practice establishing the claims at issue here. Benjamin first filed a petition to invalidate the

marriage and then filed a separate motion to terminate maintenance, both of which the circuit court

ultimately dismissed. He appeals from those dismissals. Additionally, Benjamin appeals from an evidentiary ruling the circuit court made during a proceeding on Jacqueline's 2020 petition for a rule to show cause regarding Benjamin's cessation of maintenance payments. We affirm the rulings of the circuit court.

¶ 3                                FACTS

¶ 4    Benjamin and Jacqueline were married in 1994. About 20 years later, Benjamin filed a petition for dissolution of marriage. In 2014, the circuit court entered a judgment for dissolution of marriage, which incorporated a marital settlement agreement (MSA) reached by both parties, following negotiations during which both parties were represented by counsel. The MSA detailed, in relevant part, Benjamin's agreement and obligation to pay Jacqueline maintenance at an initial rate of $20,000 a month. The judgment for dissolution stated that Benjamin entered into the MSA "freely and voluntarily and without coercion." Additionally, the MSA revealed Benjamin had financial assets exceeding $3 million, and the couple owned multiple residences. The case was essentially dormant for the next six years.

¶ 5    On October 19, 2020, Jacqueline filed a petition for rule to show cause seeking an order of indirect civil contempt, alleging in relevant part that Benjamin was not complying with his maintenance obligations to her.

¶ 6    On the same day, Benjamin filed a petition to invalidate the former marriage pursuant to 750 ILCS 5/301(1) (West 2018). In his petition, Benjamin alleged that his relationship with Jacqueline began in 1985, when he was 16 years old and in high school. Jacqueline was his teacher and a faculty advisor to his tennis team. According to Benjamin, Jacqueline used these positions to "take dominance and control" over him. In June 1985, Jacqueline "committed sexual assault upon" Benjamin. Thereafter, she used her "position of trust, authority, supervision and dominance"

2

over Benjamin to "sexually assault" him "on an almost weekly basis." The relationship continued after Benjamin turned 18 years old. On March 26, 1994, when Benjamin was 25 years old, the parties married, at Jacqueline's "insistence" and due to "the dominance and control" she exercised over him. Because of this dominance and control, he was incompetent and without capacity to consent to the marriage. Therefore, the petition continued, the marriage was "invalid and void, *ab initio*," and any orders resulting from it, including the judgment for dissolution and MSA, were also void. Specifically, he claimed he agreed to the MSA "without his valid consent and under duress" because "he continued to be under the control and dominance" of Jacqueline.

¶ 7 As a remedy, Benjamin requested, in relevant part, that Jacqueline disgorge all money and personal property she received from Benjamin pursuant to the MSA over the more than five years in which it had been in effect.

¶ 8 Benjamin attached the December 11, 2014, judgment for dissolution of marriage, and the MSA incorporated therein, to his petition to invalidate. The judgment acknowledged that Benjamin filed the initial petition for dissolution, citing "irreconcilable differences"; both parties entered into the MSA "freely and voluntarily"; Benjamin and Jacqueline were "lawfully married" on March 26, 1994; and both parties "freely and voluntarily and without coercion" agreed to the MSA in lieu of trial.

¶ 9 In section 2.2 of article II of the MSA, titled "Maintenance," the parties agreed that Benjamin would make maintenance payments to Jacqueline starting January 15, 2015. The payment calculation could "be modified as necessary to reflect any change in how Benjamin is compensated by his then current employer" and could also be modified if Jacqueline's pension payment amount changed.

¶ 10   In article II, section 2.4, the parties agreed that, "The maintenance payments *** pursuant to this Article II shall be non-modifiable as to amount and duration, pursuant to Section 502(f) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/502), except as specifically provided in this Article II." Section 2.4 lists six termination events—180 months of payments, Benjamin's or Jacqueline's death, her remarriage or entry into a civil union, or Jacqueline's cohabitation. Article II does not contain any other terms permitting modification or termination of maintenance, aside from a provision specific to a possible buy-out of Benjamin's then-employer.

¶ 11   On October 23, 2020, Jacqueline moved to dismiss the petition to invalidate pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2018)). In the motion, Jacqueline argued, "The claim of sexual abuse was never alleged or addressed at any time including the filing of the Petition for Dissolution of Marriage, mediation, or prove-up and entry of the Judgment for Dissolution of Marriage." She further argued Benjamin's claim was untimely and that, "[t]o now claim for the first time that he lacked the capacity to marry in 1994, more than 26 years after the marriage took place, is false, fraudulent, and sanctionable."

¶ 12   Benjamin responded to Jacqueline's motion to dismiss his petition to invalidate, stating, "he did not claim sexual abuse upon him by Jacqueline in any prior pleading or action *** [because] due to her dominance and control over him he did not have the capacity to do so."

¶ 13   Jacqueline later filed an amended motion to dismiss the petition to invalidate based on sections 2-615 and 2-619(a)(4), (5), and (9) (*id.* §§ 2-615, 2-619(a)(4), (5), (9)) of the Code. Benjamin responded to Jacqueline's amended motion to dismiss, alleging that in addition to lack of capacity, he also could not consent to the marriage in 1994 "due to the fraud or duress" by Jacqueline.

¶ 14 On February 18, 2021, the circuit court granted Jacqueline's amended motion to dismiss but permitted Benjamin to file an amended petition.

¶ 15 On March 18, 2021, Benjamin filed his amended petition to invalidate the marriage. Therein, Benjamin reiterated the allegations of the original petition. Additionally, Benjamin included new allegations that, "After years of therapeutic counseling *** on or about September 28, 2020, [he] finally became aware of the dominance and control Jacqueline had over him and that she had repeatedly raped him while he was minor." The amended petition continued, "At the time Benjamin became aware of the dominance Jacqueline had over him, he had a psychological and emotional breakthrough of the control Jacqueline had over him and was then able to break away from her dominance and control." Benjamin attached the judgment for dissolution and MSA to the amended petition to invalidate.

¶ 16 Jacqueline moved to dismiss the amended petition to invalidate pursuant to section 2-619(a)(4) and (a)(9). In the motion, Jacqueline admitted that "she did enter into a relationship with [Benjamin] towards the completion of his high school education." In the section 2-619(a)(4) portion of the motion, she argued *res judicata* barred the amended petition because the judgment of dissolution was a final judgment containing a specific finding that the marriage had been valid. See *id.* § 2-619(a)(4). In the section 2-619(a)(9) portion, she argued, in relevant part, that because she and Benjamin were divorced, there was no marriage to invalidate. See *id.* § 2-619(a)(9).

¶ 17 Benjamin responded to Jacqueline's motion to dismiss his amended petition to invalidate, arguing *res judicata* could not apply because new facts or conditions had arisen, specifically his therapeutic breakthrough. In Jacqueline's reply, she denied she brought her motion pursuant to section 2-615.

¶ 18   On June 17, 2021, the circuit court granted Jacqueline's motion to dismiss Benjamin's amended petition to invalidate. At the argument on the motion, the court confirmed it granted dismissal on the basis of both subsections (a)(4) and (a)(9) of section 2-619. Regarding section 2-619(a)(9), the court explained, "the marriage was dissolved and, therefore, there's no marriage at this time to invalidate."

¶ 19   Benjamin moved to reconsider that dismissal. At an August 6, 2021, proceeding on the motion, his counsel responded to the question of whether Benjamin alleged any "repressed memory" of the sexual assault with "[n]ot specifically." The circuit court denied the motion. In so ruling, it specified that it believed, "you can't invalidate a marriage that's already been dissolved." The court further stated, "I don't think the theory of dominion and control equates to [lack of] legal capacity." It acknowledged Benjamin did not present a typical repressed memory argument, where "the repressed memory [is the victim doesn't] even remember the facts."

¶ 20   On August 26, 2021, Benjamin filed a "motion" to terminate maintenance, arguing that his therapeutic breakthrough constituted a "substantial change in circumstances." He requested that the circuit court terminate maintenance as of the date of filing.

¶ 21   Jacqueline moved to dismiss Benjamin's motion to terminate maintenance under both sections 2-615 and 2-619. In the section 2-615 portion of her motion, she argued the petition was legally insufficient because the MSA stated maintenance was generally nonmodifiable in terms of duration and amount and could only be modified or terminated as specified in the MSA, which does not permit modification or termination based on a substantial change in circumstances. She further argued that even if a substantial change in circumstances was a potential ground for modification or termination, Benjamin failed to plead a substantial change because he made no

6

showing that, "the needs of the spouse receiving maintenance or the ability of the other spouse to pay that maintenance [had] changed."

¶ 22   On October 6, 2021, Jacqueline filed an amended petition for a rule to show cause, again alleging that Benjamin was not complying with his maintenance obligations.

¶ 23   On November 1, 2021, Benjamin responded to Jacqueline's motion to dismiss his motion to terminate maintenance, arguing that he sufficiently alleged a substantial change in circumstances and that this constituted a valid basis to terminate maintenance under the MSA. He further argued he would not have agreed to the MSA's maintenance terms but for Jacqueline's dominance and control.

¶ 24   During proceedings on the motion to terminate maintenance, Jacqueline's counsel argued that Benjamin could not allege the MSA was void as a ground to terminate maintenance and that to pursue a claim that the MSA should be vacated, Benjamin had to petition the circuit court under section 2-1401 of the Code (735 ILCS 5/2-1401 (West Supp. 2021)). Benjamin's counsel argued that a contract entered into under duress may be void, but here Benjamin was not requesting that the court vacate the MSA. In granting Jacqueline's motion to dismiss, the circuit court found "that the substantial change in circumstances mentioned in [the statute] has to do with the financial circumstances of the parties and nothing else." The court granted Jacqueline's motion to dismiss Benjamin's motion to terminate maintenance under section 2-615 of the Code.

¶ 25   Benjamin moved to reconsider the dismissal of his motion to terminate maintenance. Therein, he argued the court erred by stating a substantial change in circumstances "has to do with the financial circumstances of the parties and nothing else." He reiterated that the substantial change in circumstances which should permit him to terminate maintenance was his realization "of the dominance and control" Jacqueline had over him. Jacqueline responded, arguing that a

7

substantial change in circumstances only refers to the needs of the receiving spouse or means of the paying spouse. She contended Benjamin could cite to no case showing "a realization of emotional abuse qualified as a substantial change in circumstances."

¶ 26   On March 23, 2022, the circuit court denied Benjamin's motion to reconsider. The court explained that the MSA "states that [Benjamin's] maintenance obligation is non-modifiable in terms of duration and amount," and "sets forth the conditions *** when [Benjamin's] maintenance obligation would terminate. And a substantial change of circumstances is not one of those conditions."

¶ 27   On May 19, 2022, at a hearing on Jacqueline's amended petition for rule to show cause, Benjamin stated he stopped paying maintenance in 2020 "[b]ecause [Jacqueline] raped me when I was 16." On May 20, 2022, the circuit court issued a rule to show cause against Benjamin "to show why he should not be held in contempt of Court for failure to comply with the Judgment for Dissolution of Marriage" specific to his maintenance payments.

¶ 28   On May 24, 2022, the circuit court held a hearing on whether Benjamin should be held in indirect civil contempt. During the proceeding, Benjamin began to testify regarding the origins of his and Jacqueline's relationship. Jacqueline's counsel objected, and Benjamin's counsel responded that the origins formed "the basis of why he stopped making payments." The circuit court sustained the objection but permitted Benjamin's counsel to make an offer of proof of the proposed testimony.

¶ 29   During the offer of proof, Benjamin testified he met Jacqueline in high school, when he was a student and she his teacher. He did not understand that Jacqueline had sexually assaulted him when they first had sexual intercourse and still did not understand this years later when he filed for divorce. He sent Jacqueline a letter in 2017, in which he wrote he was under her dominance

and control when he signed the MSA. Benjamin further testified that he read the well-publicized recent indictment of Ghislaine Maxwell for similar conduct, which triggered him to stop paying maintenance, and that his therapeutic breakthrough in September 2020 helped him realize Jacqueline groomed him. Benjamin reiterated he would not have married Jacqueline or agreed to the MSA had he been aware of her dominance and control.

¶ 30 Following the offer of proof, the court adhered to its prior decision not to admit Benjamin's proffered testimony into evidence. The court then found that Benjamin had no legal justification to cease his maintenance payments and held him in indirect civil contempt. In so finding, the court explained that Benjamin "did not present evidence to support a legal justification to stop paying maintenance," despite his "belief that he has a legal defense to [Jacqueline's] amended petition for indirect civil contempt because he was sexually assaulted by Jacqueline while he was in high school."

¶ 31 On May 25, 2022, the circuit court entered an order adjudicating Benjamin in indirect civil contempt for failing to pay Jacqueline $463,197 in maintenance and ordered that he pay that sum by June 21, 2022, to purge the contempt. On June 17, 2022, the court ordered Benjamin to pay an additional $18,237.50 in attorney fees. On June 22, 2022, the circuit court entered an order finding, in relevant part, that (1) Benjamin purged himself of contempt by paying the required maintenance and attorney fees, and (2) "the issues being resolved, this matter is off call." This appeal followed.

¶ 32                                    ANALYSIS

¶ 33 On appeal, Benjamin argues that the circuit court (1) erred in dismissing his amended petition to invalidate marriage, (2) erred in dismissing his motion to terminate maintenance, and (3) abused its discretion by not admitting Benjamin's testimony into evidence during the May 24, 2022 proceeding.

¶ 34   We begin with Benjamin's contention that the circuit court erred in granting Jacqueline's motion to dismiss his amended petition to invalidate marriage. Specifically, he contends that *res judicata* did not bar his claim and that the court misapplied section 2-619(a)(9) of the Code because Illinois courts can invalidate a marriage that no longer exists pursuant to *In re Estate of McDonald*, 2022 IL 126956.

¶ 35   Under section 301 of the Illinois Marriage and Dissolution of Marriage Act (Act), a party can seek to invalidate a marriage because they "lacked capacity to consent to the marriage at the time the marriage was solemnized, either because of mental incapacity or infirmity *** or a party was induced to enter into a marriage by force or duress." 750 ILCS 5/301(1) (West 2018). The Act requires a party (or their legal representative) to file the petition to invalidate "no later than 90 days after the petitioner obtained knowledge of the described condition." *Id.* § 302(a)(1).

¶ 36   The circuit court dismissed Benjamin's petition to invalidate pursuant to section 2-619 of the Code. Under the Code, a party may move to dismiss a pleading under section 2-615, section 2-619, or both. A section 2-615 motion "challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Under section 2-615, the circuit court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the non-movant, then determine whether the alleged facts contained in the pleadings, and attached documents to the pleadings, are legally sufficient to state a claim. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 320 (2008). "Exhibits are a part of the complaint to which they are attached and, absent some explanation, the factual matters contained within an exhibit serve to negate inconsistent allegations of fact contained within the body of the complaint." *Metrick v. Chatz*, 266 Ill. App. 3d 649, 653 (1994). A section 2-619 motion to dismiss admits the legal sufficiency of the pleading but contends that an affirmative matter precludes the

claim. *Illinois Road & Transportation Builders Ass'n v. County of Cook*, 2022 IL 127126, ¶ 10. Affirmative matters include arguments that the claim is "barred by a prior judgment," or "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." See 735 ILCS 5/2-619(a)(4), (9) (West 2018). We review the circuit court's dismissal of a pleading *de novo*. *Illinois Road*, 2022 IL 127126, ¶ 10. Moreover, a reviewing court may affirm a lower court's ruling on any basis supported by the record. See *People v. Gawlak*, 2019 IL 123182, ¶ 39; see also *Rivera v. Allstate Insurance Co.*, 2021 IL App (1st) 200735, ¶ 25; *Morris v. Williams*, 359 Ill. App. 3d 383, 386-87 (2005).

¶ 37    In Benjamin's initial petition to invalidate, he alleged that because Jacqueline sexually assaulted him beginning when he was 16 years old in 1985, he then lacked capacity in 1994 to consent to the marriage. He alleged Jacqueline exerted "dominance and control" over him and used her "position of trust, authority, supervision, and dominance" to insist they marry. Benjamin further alleged he remained under her "dominance and control" when he filed for divorce and agreed to the MSA. The circuit court dismissed the petition based on section 2-615 but permitted Benjamin to file an amended petition. In the amended petition, Benjamin added allegations that he only became aware of Jacqueline's dominance and control on September 28, 2020, 21 days before he filed the initial petition to invalidate. He also claimed he entered the MSA without valid consent and under duress. Benjamin attached the judgment for dissolution and MSA to the amended petition. Both documents recite in multiple places that Benjamin pursued dissolution and agreed to the MSA freely and voluntarily, and with the advice of counsel.

¶ 38    Jacqueline moved to dismiss the amended petition only under section 2-619(a)(4) and (a)(9) of the Code, alleging (1) *res judicata* barred Benjamin's claim because he already legally acknowledged that the marriage was valid by signing the MSA, meaning the judgment for

dissolution was a final judgment that the marriage was valid, and (2) the marriage was already dissolved, and thus there was no marriage to declare invalid. The circuit court granted Jacqueline's motion to dismiss on both grounds.

¶ 39 We affirm the circuit court's dismissal of Benjamin's amended petition to invalidate marriage but on different grounds. While Jacqueline did not move to dismiss the amended petition under section 2-615, and the court ultimately dismissed it on section 2-619 grounds, we hold that the amended petition failed to state a claim under section 2-615. Even accepting all the allegations in the amended petition as true, and drawing all reasonable inferences in Benjamin's favor, it failed to allege sufficient facts to reach a conclusion that he filed the petition to invalidate marriage within 90 days of gaining knowledge of the alleged condition that deprived him of capacity at the time of marriage. We note that while statute of limitations issues are typically raised under section 2-619(a)(5), section 2-615 dismissal is appropriate "where it appears from the face of the [pleading] that the statute of limitations has run." See *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 456 (2006). Additionally, although Jacqueline moved for dismissal under section 2-619, not section 2-615, this does not preclude us from affirming under section 2-615 (as Benjamin argues), as we may affirm on any basis supported by the record. See *Rivera*, 2021 IL App (1st) 200735, ¶ 25.

¶ 40 Benjamin's allegation that he lacked capacity to marry is based on his being under Jacqueline's "dominance and control." He further alleges that he lacked knowledge of that condition for decades, specifically until September 28, 2020, also due to this same "dominance and control." The facts contained in the judgment for dissolution and MSA, however, directly contradict Benjamin's allegation that he was under Jacqueline's "dominance and control" beyond the dissolution.

¶ 41   Specifically, the attachments to the amended petition show Benjamin to be a successful professional who (1) filed a petition for dissolution of marriage; (2) participated in negotiations against Jacqueline while represented by counsel; and (3) following those negotiations, agreed to enter the MSA, which included language that the initial marriage was lawful and he was acting of his own free will, voluntarily and without duress. Under the facts as alleged, we may be able accept (for purposes of a motion to dismiss) that Benjamin was for some period of time so under Jacqueline's "dominance and control" that he initially lacked capacity to consent to marriage and then was unable to gain knowledge of this condition during their near two-decades-long marriage. The pleading is also clear by virtue of the attachments, however, that any condition of Benjamin being under, or unaware of, this "dominance and control" ended when he took the numerous affirmative steps to dissolve his marriage.

¶ 42   It was incumbent upon Benjamin to at least plead some facts alleging how Jacqueline's "dominance and control" could have persisted beyond the dissolution such that he could not have learned of his alleged condition at the time of marriage until September 2020. See *Metrick*, 266 Ill. App. 3d at 653 ("[A]bsent some explanation," factual matters revealed in an attachment to a pleading will "negate inconsistent allegations of fact contained within the body" of the pleading.). Instead, the amended petition provides two short paragraphs containing only the conclusory allegations that he was generally under her "dominance and control" until his therapeutic breakthrough. It is well-established that conclusory statements are insufficient to state a claim. See *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31 ("a court cannot accept as true mere conclusions unsupported by specific facts"). Here, there are no allegations that would permit a court to conclude he still acted under Jacqueline's "dominance and control" through September 28, 2020, despite acting counter to it in 2014. There are no allegations of a mental

health diagnosis, no allegations of repressed memory, and, indeed, no allegations even describing how Jacqueline's "dominance and control" actually manifested in Benjamin's life.

¶ 43   Instructive here is the reasoning Illinois courts have used when considering whether to toll the statute of limitations in civil matters when a victim of sexual assault claims repressed memory. In *Presberry v. McMasters*, 2021 IL App (2d) 200538, ¶¶ 33-36, the court discussed *Clay v. Kuhl*, 189 Ill. 2d 603 (2000), and *Parks v. Kownacki*, 193 Ill. 2d 164 (2000), to examine the difference between sexual abuse victims who claim they repressed the memory of their abuse, and victims who allege they did not repress the memory of the abuse, but could not appreciate the full extent of the damage the abuse caused until years later. In this discussion, the *Presberry* court explained that in Illinois, based on *Clay* and *Parks*, "the fact that the [victim] did not realize all the harm that [her abuser] caused her until years later is *not* grounds to extend the statute of limitations." (Emphasis added). *Presberry*, 2021 IL App (2d) 200538, ¶ 36. Similarly, here, Benjamin does not allege that he did not recall the alleged grooming conduct until September 28, 2020; instead, he alleged he did not realize that the conduct resulted in Jacqueline's "dominance and control" over him. This would not be sufficient in the repressed memory context to toll the statute of limitations, and we believe the analogous result is appropriate here, particularly given the conclusory nature of Benjamin's allegations on this point.

¶ 44   In sum, the facts recited in the judgment for dissolution and MSA negate the allegation that Benjamin continued to act pursuant to, and without knowledge of, Jacqueline's "dominance and control" any time beyond December 11, 2014. See *Metrick*, 266 Ill. App. 3d at 653. It is thus clear on the face of his pleading that Benjamin did not file his petition to invalidate within 90 days of obtaining knowledge of the alleged condition that rendered him unable to consent to marriage on

14

March 26, 1994, as required by the Act. See 750 ILCS 5/302(a)(1) (West 2018). Therefore, the amended petition is legally insufficient and subject to dismissal.

¶ 45  Because we hold that Benjamin's petition failed to state a claim and was suitable for dismissal under section 2-615, we need not reach the arguments in the parties' briefing regarding whether *res judicata* barred Benjamin's invalidation claim, or his argument that, pursuant to *McDonald*, the circuit court erred by holding that a marriage that no longer exists cannot be declared invalid.

¶ 46  Finally, we emphasize that we reach no conclusion here as to the viability of grooming claims, and our holding is limited to the specific facts of this matter. The effect conduct like that Jacqueline is accused of could have on a victim's psychological well-being and legal capacity are not issues we can reach here, and this opinion should not be cited for the proposition that marriage invalidation claims raising such issues are generally precluded.

¶ 47  Benjamin next claims the circuit court erred by denying his "motion" to terminate maintenance. The court dismissed the motion to terminate based on section 2-615 of the Code, which, again, is a decision we review *de novo*. *Illinois Road*, 2022 IL 127126, ¶ 10. As noted above, facts contained in attachments to a pleading can negate inconsistent allegations in the body of the pleading. *Metrick*, 266 Ill. App. 3d at 653.

¶ 48  Under the Act, when a marriage is dissolved, "the court may grant a maintenance award for either spouse," or the spouses can agree on maintenance payments pursuant to an MSA. 750 ILCS 5/502(a), 504(a) (West 2018). Here, the parties reached an MSA. In an MSA, "[t]the parties may provide that maintenance is non-modifiable in amount, duration, or both." *Id.* § 502(f). If the parties do not so specify, a spouse's maintenance obligations are modifiable upon a showing of a "substantial change of circumstances." *Id.* An MSA is a contract, subject to the usual rules of

contract interpretation. *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009). In interpreting a contract, the reviewing court's objective is to give effect to the parties' intent, determined from the language of the contract given its ordinary meaning. *In re Marriage of Scarp*, 2022 IL App (1st) 210711, ¶ 11. Contract interpretation is a matter of law that we review *de novo*. *Blum*, 235 Ill. 2d at 33.

¶ 49    Benjamin's motion to terminate maintenance alleged that his therapeutic breakthrough constituted a substantial change in circumstances which justified termination. He did not list any other grounds. Benjamin attached the judgment of dissolution and MSA to the motion to terminate.

¶ 50    Section 2.2 of the MSA states, in relevant part, that maintenance may be modified "as necessary to reflect any change in how [Benjamin] is compensated by his then current employee," and also provides for termination in the event of his then-employer's buyout or modification should Jacqueline's pension payouts change. The MSA contains no other terms permitting modification or termination of maintenance. Section 2.4 of the MSA lists six termination events— 180 months of payments, Benjamin's or Jacqueline's death, her remarriage or entry into a civil union, or Jacqueline's cohabitation. Section 2.4 also states that maintenance is "non-modifiable as to amount and duration, pursuant to Section 502(f) of [the Act]," except for those six events.

¶ 51    The circuit court granted Jacqueline's motion to dismiss Benjamin's motion to terminate maintenance pursuant to section 2-615. When it denied Benjamin's motion to reconsider that decision, the court explained that the MSA listed the only methods by which maintenance could be terminated or modified, and a substantial change in circumstances was not included in the list.

¶ 52    Based on this record, we hold that the circuit court correctly dismissed Benjamin's motion to terminate maintenance pursuant to section 2-615 because the MSA directly contradicted Benjamin's claim that his maintenance obligation was modifiable or terminable based on a substantial change in circumstances. The Act allows parties to fashion an MSA such that a

substantial change in circumstances does not constitute a modification or termination event, and the record is clear that Benjamin and Jacqueline did just that in their MSA. Section 2.4 of the MSA states maintenance obligations are nonmodifiable as to duration and amount, absent specifically listed events, which do not include a substantial change in circumstances. This provision is clear and unambiguous, and thus we must give effect to the parties' intent and hold that a substantial change in circumstances is not an event which would permit Benjamin to modify or terminate maintenance. See *Scarp*, 2022 IL App (1st) 210711, ¶ 11. Benjamin's motion to terminate maintenance relied solely on this theory, and thus failed to state a claim, making it subject to dismissal under section 2-615.

¶ 53 Benjamin's primary counterargument on appeal echoes his theory regarding the amended petition to invalidate: he was under Jacqueline's "dominance and control" at the time he entered the MSA and thus the MSA itself is invalid. This argument fails because Benjamin's motion to terminate maintenance did not seek invalidation of the MSA as a remedy, he did not request that the circuit court invalidate the MSA while the motion was pending, and the court made no ruling on this issue. In fact, Benjamin's counsel specifically stated Benjamin was *not* seeking to vacate the MSA during a proceeding on the motion. Instead, Benjamin requested as relief only the termination of maintenance pursuant to the MSA, based on a substantial change in circumstances. Benjamin's pleading may contain language indicating he would not have entered the MSA but for Jacqueline's alleged "dominance and control," but he specifically chose below not to pursue a theory that the MSA was invalid and should be set aside, and he cannot now do so here. See *Wagner v. City of Chicago*, 166 Ill. 2d 144, 147 (1995) ("as a general rule, any issue not raised at the trial court level is waived").

¶ 54   Benjamin also argues that the circuit court should be reversed because, under the Act, maintenance obligations are generally modifiable due to a substantial change in circumstances, and thus his petition stated a ground for relief. This argument fails because the Act explicitly permits parties to make maintenance nonmodifiable in duration or amount, or both, and (as explained above) Benjamin's and Jacqueline's MSA explicitly does just that. See 750 ILCS 5/502(f) (West 2018). It follows that the court appropriately found that the motion to terminate maintenance did not state a ground for relief.

¶ 55   Benjamin's final claim is that the circuit court erred by not admitting his testimony regarding Jacqueline's alleged sexual assault, and later "dominance and control" over him, during the hearing on Jacqueline's amended petition for rule to show cause.

¶ 56   Benjamin's proffered testimony came in the context of a hearing on whether Benjamin should be found in indirect civil contempt for his failure to pay maintenance. Indirect civil contempt is appropriate when the circuit court finds, by a preponderance of the evidence, that a party has disobeyed a court order. *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006). That party then has the burden to demonstrate good cause for noncompliance. *Id.* at 107-08. "[N]oncompliance with an order to pay maintenance constitutes *prima facie* evidence of contempt." *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 210 (2011) (citing *In re Marriage of Logston*, 103 Ill. 2d 266, 285 (1984)). To avoid contempt, the delinquent spouse must "prove that he neither has money now with which to pay, nor has he wrongfully disposed of money or assets with which he might have paid." *Id.*

¶ 57   The circuit court denied Benjamin's testimony as irrelevant to the proceedings. Relevant evidence is evidence which tends to make a fact at issue more or less likely true. *Peach v. McGovern*, 2019 IL 123156, ¶ 26. The decision of whether to admit evidence is within the sound

discretion of the circuit court and will not be reversed absent an abuse of discretion. *Id.* ¶ 25. A court abuses its discretion where "no reasonable person would take the position adopted by the circuit court." *Id.*

¶ 58   The only issue before the circuit court was whether Benjamin had good cause not to pay maintenance, as he did not dispute that he withheld payments starting in 2020 or that his maintenance obligation under the MSA was active during this time. The court, after hearing Benjamin's offer of proof regarding Jacqueline's alleged misconduct and its effect on him, deemed the proffered testimony irrelevant and refused to admit it into evidence.

¶ 59   On this record, we cannot say the circuit court abused its discretion in refusing to admit Benjamin's testimony into the record. The proffered testimony would not have made a fact at issue in the proceeding more or less likely true, and thus the court had grounds to exclude it. *Id.* ¶ 26. We note Benjamin has not specified what relief he seeks from this court on this particular claim and does not argue the circuit court's contempt decision would have, or even should have, changed had it admitted the proffered testimony. Even under the broadest reading of Benjamin's claim on appeal, however, we cannot find the court abused its discretion. Simply, the proposed testimony had no relevance to the actual issues before the court—whether a maintenance obligation existed, whether Benjamin failed to honor that obligation, and whether Benjamin could show good cause for not paying because he lacked the means and had not wrongfully disposed of potential funds. *Anderson*, 409 Ill. App. 3d at 210. Thus, the claim fails.

¶ 60   As the circuit court noted, Benjamin may have legitimately believed Jacqueline's alleged conduct should have permitted him to invalidate the marriage or terminate his maintenance obligation. Those issues, however, were not at stake in the contempt hearing. His opportunity to challenge the court's orders regarding his amended petition to invalidate and motion to terminate

maintenance lied in an appeal before a reviewing court, but until such time as his obligations under the MSA were explicitly terminated, his requirement to pay maintenance remained intact. Benjamin could not choose to ignore the court's orders because he disagreed with them, and the fact that he did so was grounds for contempt. See *id.* (the failure to pay maintenance is *prima facie* evidence of contempt).

¶ 61                                                            CONCLUSION

¶ 62    Thus, we must leave for another day the question of whether a verified history of sexual misconduct or grooming by a spouse might be a sufficient basis to invalidate a marriage under section 301(1) of the Act (750 ILCS 5/301(1) (West 2018)). Here, even accepting as true Benjamin's allegations that he was acting under Jacqueline's "dominance and control" such that he lacked capacity to contract when they married, the pleadings and incorporated exhibits are clear on their face that such "dominance and control" no longer existed when he filed for dissolution of marriage in 2014, rendering his 2020 claim untimely. Additionally, Benjamin's claim regarding termination of maintenance fails because he did not state a claim under the express terms of the MSA and he did not bring a claim that the MSA as a whole was void. Finally, Benjamin's obligation to pay maintenance was not excused from 2020 to 2022, no matter his feelings about its propriety, and thus his proffered testimony was irrelevant to the narrow issues at stake in his indirect civil contempt hearing. We affirm each of the circuit court's orders.

¶ 63    Affirmed.

---

***In re Marriage of Andrew*, 2023 IL App (1st) 221039**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-D3-31099; the Hon. Thomas J. Kelley, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Allen S. Gabe, of Allen Gabe Law, P.C., of Schaumburg, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joel Ostrow, of Bannockburn, for appellee. |

---