2025 IL App (1st) 230576-U

SIXTH DIVISION

September 30, 2025

Nos. 1-23-0576, 1-24-0630, 1-24-1307, and 1-25-1003 (cons.)

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* THE MARRIAGE OF ALISSA LEBOVICH, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| | ) | |
| and | ) | No. 2018 D 10915 |
| | ) | |
| LENNY LEBOVICH, | ) | Honorable |
| | ) | Abbey Fishman Romanek, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    ***Held:***    In this dissolution of marriage proceeding, we (1) reject respondent's claim of judicial bias; (2) affirm the circuit court's allocation of summer parenting time, decision on extracurricular sports activities, requirement that respondent provide full access to the children's electronic devices to petitioner, dissipation finding regarding a severance package, and attorney's fees award; and (3) remand for further proceedings consistent with this order.

¶ 2     This case arises from the dissolution of marriage proceedings between the respondent-appellant Lenny Lebovich and petitioner-appellee Alissa Lebovich. Lenny and Alissa have two children, M.L. and N.L. The claims primarily arise from two orders the circuit court entered following trial, a parental allocation order (Allocation Judgment) and the dissolution of marriage judgment (Dissolution Judgment). Lenny challenged both orders in a series of appeals, each consolidated here, in which he raises both large and small-scale challenges to the court's actions.

¶ 3     Lenny's overarching claim is that the court's orders should be vacated in their entirety, and the matter remanded for new proceedings in front of a new judge, because the circuit court judge was biased against him. Failing that, he challenges narrower aspects of the court's orders. Regarding the Allocation Judgment, he challenges the court's summer parenting time and extracurricular activity findings, along with the requirement that he provide his Apple password to Alissa and any other information she needs to have co-control of the children's electronic devices. Regarding the Dissolution Judgment, he challenges the court's finding that he dissipated marital funds by not accepting a severance payment from his former employer and the award of $200,000 in attorney's fees to Alissa. Finally, Lenny challenges orders entered after the Dissolution Judgment which (1) required a full turnover of proceeds arising from the sale of shares the court deemed marital property, and (2) suspended his parenting time until he purged himself of contempt for his continued failure to provide all information to Alissa regarding access to the children's electronic devices. For the reasons below, we reject Lenny's bias claim; affirm the Allocation and Dissolution Judgments; and remand for further proceedings.

¶ 4                                   BACKGROUND

¶ 5    Alissa filed her petition for dissolution of marriage on December 13, 2018. During the pendency of the dissolution proceedings, the circuit court appointed a Guardian Ad Litem (GAL) for M.L. and N.L., Howard Rosenberg, on May 9, 2019.

¶ 6    On July 15, 2021, the circuit court entered an order which, in relevant part, required Lenny to immediately "provide all passwords, access codes, and/or login information required for Alissa to access the children's electronic devices and have the ability to download media and applications on the devices *** the children's use of technology must be 100 percent transparent." The court ordered that if Lenny did not comply by close of business on July 19, 2021, he would thereafter incur a fine of $100 a day until he complied. Based on the record, Lenny has still not complied up to the date of the filing of this order. Lenny's noncompliance has resulted in multiple court orders against him, including the entry of sanctions in the amount of $75,700 on August 29, 2023, and the suspension of his parenting time pursuant to an indirect civil contempt finding on May 6, 2025.

¶ 7    Following a hearing on December 1, 2021, the circuit court ordered Lenny to pay $125,000 in interim attorney's fees. During the hearing, the court explained it was awarding the fees "for the purpose of equalizing the fees [paid] to date." The court acknowledged Alissa had already "paid about $430[,000]" through funding provided in part by her mother, Carolyn Schwarz.

¶ 8    On May 28, 2021, the circuit court entered an order establishing that summer parenting time for 2021 would use a "5-2-2-5" split to make the parenting time roughly equivalent. M.L. and N.L. primarily resided with Alissa outside of the summer months.

¶ 9    Before trial, both parties filed a petition for contribution to attorney's fees. Alissa moved under 750 ILCS 5/503 (West 2020) and 750 ILCS 5/508 (West 2020).

¶ 10    Trial occurred across multiple dates between March 1, 2022, and June 30, 2022. At trial, Lenny testified he had been unemployed since his termination from PRE Brands (PRE) in 2019, a

company he helped start and for whom he served as Chief Executive Officer (CEO). He was living off of his "retirement," though he made no withdrawals in 2022. Lenny declined a severance offer from PRE of $62,500 because it "[p]rovided blanket releases of any claims against the company." He had not filed a claim against PRE and had no plan to do so. Regarding the electronic device access issue, Lenny testified he "provided all the information that I am able to provide." He admitted he did not provide Alissa with his personal access code or login information because his "personal password" is "connected to everything, all my e-mail, and everything I do using my technology," and that M.L. and N.L.'s device accounts were "underneath" that personal password.

¶ 11    Alissa testified she was concerned with N.L.'s participation on a travel basketball team with children two years older than him. She believed Lenny overscheduled the children with extracurricular activities, and was concerned with "travel sports" in particular because they are "very time-consuming." Lenny also signed up M.L. for baseball without notifying Alissa. She still had not been provided full access for the children's electronic devices despite the circuit court's July 15, 2021 order. Respecting summer parenting time, she did not want to continue the equal split because "the children were overscheduled, exhausted."

¶ 12    Schwarz testified at trial regarding her financial support of Alissa, including the funds she supplied Alissa to assist with attorney's fees. Alissa gave Schwarz promissory notes regarding the attorney's fees Schwarz helped Alissa pay, and Schwarz "definitely" had an expectation of repayment from Alissa.

¶ 13    Dr. Sol Rappaport testified that Lenny hired him to perform an evaluation under 750 ILCS 5/604.10(c) (West 2018), which states in relevant part that the "court shall order an evaluation to assist the court in determining the child's best interests." During his interviews with Rappaport, Lenny admitted that he called Alissa "useless," "worthless," and "the C-word." While Lenny was

employed, "by far a majority of decisions were made by Alissa." Lenny had violated various court orders during the pendency of the dissolution proceedings. Rappaport believed that M.L. and N.L.'s participation on multiple travel sports teams could "create difficulties," and that M.L. struggled with emotional issues during his baseball games. N.L. reported to Rappoport that his favorite thing about his time with Lenny was the activities, but his favorite thing about his time with Alissa was that he could relax because he was often tired after time with his father. Alissa reported that she has to limit her activities with N.L. and M.L. because they are tired when they return from Lenny's parenting time, and Rappoport agreed with her about this point.

¶ 14 On summer parenting time, Rappaport testified that the same parenting schedule should be used during the summer months as during the school year because it provided consistency, and Alissa had "been the main caregiver throughout their lives." When questioned about Rosenberg's opinion on summer parenting time, Rappoport stated he did not know whether Rosenberg recommended equal summer parenting time but admitted such an arrangement would not be "necessarily problematic."

¶ 15 Rosenberg testified about recommendations he made in his capacity as GAL, which involved multiple interviews and interactions with Lenny, Alissa, M.L., and N.L. On the electronic device access issue, Rosenberg testified "to this day Lenny has not followed that Court order because *** he think it [in]fringes upon some privacy." Regarding the children's participation in team sports, Rosenberg recommended "there should be only one team or group sport at a time" because two "is just too much." As to the summer parenting time schedule, he recommended a "2/5/5/2" split of the days, generally amounting to 50/50 parenting time, arguing it was a "good opportunity" for the children to spend time with each parent. He acknowledged the "incivility" and "war" between Lenny and Alissa had to stop for such an arrangement to work.

¶ 16   Lenny called Oksana Yoshimura, Jill McOmber, Christian Riley, Dennis Sheehan, Anne Frank, and Geoffrey Shank as witnesses, each of whom testified as to their positive observations of Lenny as a father.

¶ 17   Following the trial, the circuit court entered the two operative orders primarily at issue in this consolidated appeal: the December 2, 2022 Allocation Judgment, and the February 7, 2023 Dissolution Judgment. The court stated in the Allocation Judgment, "When a Judgment of Dissolution of Marriage is entered, this Allocation Judgment, in whole, shall be incorporated by reference into the Judgment of Dissolution of Marriage."

¶ 18   In the Allocation Judgment, the circuit court, in relevant part, made findings respecting "Extracurricular Activities and Summer Camp," which included that: "Alissa and Lenny shall consult with one another and attempt to jointly agree upon the selection and scheduling of extracurricular activities for the children and summer camp ***, subject to the terms set forth below," and continued, "[t]he children may be enrolled in one (1) team/group sport or activity per season, taking into consideration each child's preference. The parties shall alternate seasons for choice of the one (1) team/group sport or activity for both M.L. and N.L."

¶ 19   The circuit court allocated parenting time as follows: "The parties shall adhere to the following regular parenting time schedule for M.L. and N.L.: Lenny shall have one weeknight overnight with the children to occur every Wednesday.*** Lenny shall additionally have alternative weekend overnight parenting time with the children beginning on Friday [afternoon through Monday morning]. *** Lenny shall also have regular parenting time with the children on two (2) Thursday evenings per month preceding Alissa's weekend with the children ***. All other regular parenting time not specifically allocated to Lenny shall be allocated to Alissa."

¶ 20   On the electronic device access issue, the circuit court found:

6

"The children each currently have their own Apple ID and password under Lennys Apple account. Both Lenny and Alissa currently have the children's Apple ID and password information and are entitled to the same in the event that information changes. *** Because the children's Apple IDs and password are associated with Lenny's Apple account, Lenny is the only parent with the ability to fully control access to the children's Apple accounts. In recognition thereof, Lenny has an affirmative duty to provide Alissa with all passwords and information which in any way affect the children's use of their Apple ID, any device, or application (i.e. Facebook messenger). In the event that any such password is connected to any of Lenny's sensitive personal information, Lenny shall change said password to a unique password not tied to any of his other personal platforms."

¶ 21 The Dissolution Judgment contained additional findings relevant to this appeal. Before listing its findings, the circuit court recounted the testimony from various witnesses, including Lenny, and concluded "Lenny lacked credibility." The court further found that Schwarz testified credibly. In analyzing maintenance, the court noted that Alissa had an imputed income of $40,000, while Lenny's was $180,000.

¶ 22 Regarding dissipation, the circuit court found that Lenny dissipated the marital assets by $189,216.49 (not the full requested amount from Alissa's of $927,454.22). Included in that finding was $62,500 from Lenny's "waiver of severance payment" from PRE. The court rejected Lenny's explanation that accepting the severance offer would "compromise [his] rights in the future with respect to his interest in the business" and require "him to agree not to file a claim against PRE" because it found Lenny "had no intention of filing any claims against PRE and has not filed any claims against PRE."

7

¶ 23 The circuit court also ruled that Lenny's shares and interest in PRE were marital property, to be split evenly.

¶ 24 In the attorney's fees section of the Dissolution Judgment, the circuit court awarded Alissa $200,000 in fees, which included the still outstanding $125,000 in interim fees. The court explained its finding by recounting Lenny's history of elongating the proceedings, including listing multiple instances of Lenny violating court orders, which necessitated responsive filings from Alissa, including Lenny's failure to provide the passwords to the children's devices. The court also noted that on the date of Dissolution Judgment, "[t]here remains an outstanding Order of Commitment and Attachment of Contempt Order until Lenny purges himself of contempt by posting $125,000 cash bond or until release by the process of law. Lenny has refused to turn himself into the Court, has refused to comply with the Court Order requiring him to pay $125,000 to [Alissa's attorneys]." The court concluded that this conduct showed Lenny "needlessly and substantially increased the cost of litigation through his total disregard of court orders." The court acknowledged Alissa paid her attorneys $425,688 and still owed $186,479.67. It concluded, "for all these reasons, Lenny shall contribute $200,000 towards Alissa's attorneys' fees and costs (inclusive of the $125,000 previously ordered)."

¶ 25 Amongst the other findings in the Dissolution Judgment, the circuit court denied Alissa's request for permanent maintenance; awarded Lenny certain real property free of any claim from Alissa; and split multiple costs related to M.L. and N.L. 60% for Lenny and 40% for Alissa.

¶ 26 Finally, the circuit court included the following language in the Dissolution Judgment, "The Court expressly finds that there is no just reason for delaying enforcement or appeal of this Judgment."

¶ 27 Following entry of the Allocation Judgment and Dissolution Judgment, the circuit court entered two additional orders which Lenny attempts to challenge on this appeal. First, on March 1, 2023, Alissa filed an "Emergency Petition for the Entry of a Mandatory Injunction and for Turnover Order" because she had allegedly discovered Lenny potentially had access to proceeds from a sale of the PRE shares.[1] The petition had three "counts," including count II for a turnover order. Alissa sought the full proceeds of any sale because, per the Dissolution Judgment, "Alissa is awarded 50% of the membership interest in PRE Brands," and other additional funds from the court's dissipation and attorney's fees findings. In that same Judgment, Lenny is ordered to reimburse Alissa $94,608.26 of marital funds he dissipated." Lenny is also ordered to reimburse Alissa for 60% of the children's expenses." Lenny failed to appear at a hearing that same day, and the court granted count II for the turnover order and executed documents effectuating the turnover in Lenny's stead.

¶ 28 Second, Alissa filed a petition for a rule to show cause in January 2025, complaining that Lenny still had not provided her full access to the children's electronic devices. The circuit court found Lenny in indirect civil contempt on May 6, 2025, and entered an order suspending his parenting time that same day, indicating that Lenny should file a motion with the court if he purged himself of the contempt.

¶ 29 Before turning to Lenny's claims, we must note that examination of the record reveals a contentious litigation between the parties and their attorneys, which featured repeated instances of Lenny and his counsel having heated exchanges with the circuit court judge. Noteworthy amongst these exchanges are the following passages:

---

[1] This court will not discuss any specific amounts or parties involved in the transaction, as this information was filed under seal with this court.

¶ 30   On March 10, 2022, during a discussion of Lenny's concern that he could be arrested pursuant to the circuit court's body attachment order for his failure to pay the $125,000 in interim attorney's fees, the circuit court judge stated that Lenny's conduct "pisses her off" and said to Lenny, "I really don't care if you get picked up. I hope you do frankly because you blew my orders and you've blown dozens of my orders because you don't respect me or the court or anyone else as far as I can tell."

¶ 31   On March 23, 2022, during a discussion of the circuit court's requirement that neither Lenny nor Alissa disparage each other in public, the circuit court judge said to Alissa, "I bet you he doesn't know who he told because he told so many people…Don't you dare, Mr. Lebovich, sit there and tell the kids it's their fault, and the other kids are all messed up. Not that you're listening to me because I know you're not, but it's going in an order again…Your time is up. I'm done with this nonsense. I'm done hearing about how you're going to be destitute because if you were so destitute, you'd be working and you're not, and you haven't."

¶ 32   On August 15, 2023, in a discussion of Lenny's alleged failure to abide by the Dissolution Judgment's extracurricular activity limitation, the circuit court judge stated, "Do you even care about your kids, Mr. Lebovich?" and "You do what you want when you want. God bless. Go do it, but you're not doing it to your kids. I'm just done. I'm just done."

¶ 33                                JURISDICTION

¶ 34   This is a consolidated case involving four separate appeals. Lenny filed a motion to reconsider the Allocation Judgment on January 13, 2023. The circuit court denied it on February 23, 2024. Lenny then filed his notice of appeal on March 21, 2024, in case No 1-24-0630.

¶ 35    Lenny filed a motion to reconsider the Dissolution Judgment on March 1, 2023. The circuit court struck the motion that same day. Lenny filed a motion to reinstate on March 10, 2023, and also filed a notice of appeal in 1-23-0576 on March 29, 2023.

¶ 36    The court later reinstated the motion to reconsider the Dissolution Judgment on August 21, 2023, which it denied on June 7, 2024. Lenny then filed his notice of appeal in case No. 1-24-1307 on June 21, 2024.

¶ 37    Finally, following the May 6, 2025 order, Lenny filed his notice of appeal in case No. 1-25-1003 on May 27, 2025.

¶ 38    Based on the above, Lenny filed his notices of appeal within 30 days of the dismissal or denial of his motions to reconsider in the first three appeals from the Adjudication Judgment and Dissolution Judgment, i.e. case Nos. 1-23-0576, 1-24-0630, and 1-24-1307. The Dissolution Judgment was a final order that rendered both itself and the Allocation Judgment (incorporated into the Dissolution Judgment by the circuit court) final and appealable, and contained a finding of finality per Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Accordingly, this court has jurisdiction over these cases pursuant to Illinois Supreme Court Rules 301 (Feb. 1, 1994), 303 (eff. July 1, 2017), and 304(a) (eff. Mar. 8, 2016). In so finding, we acknowledge that Lenny's notice of appeal in 1-24-1307 also challenged the court's March 1, 2023 order, which, among other things, required a turnover of funds, in addition to striking the motion to reconsider. We specify that this court's finding of jurisdiction in case 1-24-1307 applies only insofar as Lenny appeals from the denial of reconsideration of the Dissolution Judgment, and not necessarily as to any other claim arising from the March 1, 2023 order, as we will explain below.

¶ 39    We note that the notice of appeal creating case No. 1-23-0576 was premature. That notice was filed within 30 days of the court's striking Lenny's motion to reconsider the Dissolution

11

Judgment, but the court later reinstated that motion, then denied it on the merits, prompting a proper, timely notice of appeal in 1-24-1037. See *Workman v. St. Therese Medical Center*, 266 Ill. App. 3d 286, 292 (1994).

¶ 40 Finally, Alissa contests this court's jurisdiction over case No. 1-25-1003, contending the order was not final and appealable. As explained below, we need not decide whether we have jurisdiction over this order, as it is obviated due to the resolution of a claim arising from the Dissolution Judgment.

¶ 41                                    ANALYSIS

¶ 42 On these consolidated appeals, Lenny raises multiple claims, beginning with the overarching claim that all appealed-from orders should be vacated due to judicial bias. Beyond bias, Lenny claims the circuit court erred in the Allocation Judgment respecting (1) the summer parenting time schedule, (2) the limitation of extracurricular activities for M.L. and N.L. to one activity per season, and (3) the electronic device access issue. He further claims the court erred in the Dissolution Judgment in its finding on (1) dissipation for refusing the $62,500 severance offer from PRE, and (2) the award to Alissa of $200,000 in attorney's fees. Finally, Lenny claims the court erred by requiring turnover of the full amount of proceeds from the PRE shares sale on March 1, 2023, and by suspending his parenting time in the May 6, 2025 order.

¶ 43                                 I. Judicial Bias

¶ 44 We must begin with judicial bias. A circuit court judge is presumed to be neutral, and a litigant bears a heavy burden to demonstrate that a judge was biased against him such that a court order may be invalidated on that basis. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). "Allegedly erroneous findings and rulings by the trial court are insufficient reasons to believe that the court has a personal bias for or against a litigant." *Id.* Bias will only be found if the litigant can

demonstrate a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994). Such a finding is only appropriate in the "most extreme circumstances." *People v. Conway*, 2023 IL 127670, ¶ 22. A judge's expressions of frustration directed towards a litigant do not necessarily demonstrate bias. See *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 39. In the context of a substitution of judge request, the Illinois Supreme Court has explained, "Where bias or prejudice is invoked as the basis for seeking substitution, it must normally stem from an extrajudicial source." *In re Estate of Wilson*, 238 Ill. 2d 519, 554 (2010).

¶ 45 At the outset, we note that Alissa contends Lenny forfeited this argument by not bringing a motion for substitution of judge. While there is precedent for finding the failure to move for substitution of judge forfeits a claim of judicial bias (see *County of Peoria v. Couture*, 2022 IL App (3d) 210091, ¶ 49) we note that, as Lenny points out, the most problematic exchanges occurred during and after the trial, making the potential for Lenny to seek substitution unrealistic. Moreover, waiver and forfeiture are limitations on the parties, not this court, and in this instance we find it appropriate to address the substance of Lenny's judicial bias argument. See *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 52.

¶ 46 Lenny argues the circuit court exhibited a pervasive bias against him beginning on July 15, 2021, and extending until the present. He cites a handful of specific incidents and passages, most notably those listed above, which reveal the circuit court judge routinely expressed frustration at Lenny's failure to follow her orders.

¶ 47 We find that the circuit court judge was not biased against Lenny such that she was incapable of rendering fair and impartial rulings. Based on the record, including the instances Lenny cites in his briefs, and recounted herein, there is no question that the judge's frustration

levels with Lenny increased as time went on, and that the judge made statements that went well beyond judicial decorum. But while the passages are unfortunate, it is well-established that expressions of frustration are not conclusive evidence of bias, and there is nothing to suggest that the judge's comments to Lenny were born out of any antagonism arising from an extrajudicial source beyond its frustration with Lenny's conduct. See *Danhauer v. Danhauer*, 2013 IL App (1st) 123537, ¶ 27; see also *Wilson*, 238 Ill. 2d at 554. Taking the most egregious passages, quoted above, into consideration, each arises from Lenny's undisputed refusal to follow the court's orders. With this context in mind, the judge's comments were borne of frustration and not fundamental antagonism.

¶ 48    Lenny's claim also fails because, despite the circuit court judge's harsh rhetoric, it entered orders in favor of both sides throughout the pendency of the litigation, including after July 15, 2021. This demonstrates the court remained able to give Lenny a fair hearing, despite his literally contemptuous behavior. *Liteky v. U.S.*, 510 U.S. at 555 (bias requires showing that a fair judgment is impossible). In the Dissolution Judgment, for example, the court denied Alissa permanent maintenance, awarded Lenny disputed property, and ordered Alissa to pay 40% of many childcare costs; these are hardly the rulings of a court that simply gave Alissa whatever she wanted. More recently, in the May 6, 2025 order, despite Lenny's years-long refusal to abide by the court's electronic device access orders, the court still permitted Lenny to purge himself of contempt without escalating the potential consequences against him, as would have been within its power. Thus, while the court's language was inappropriate, and rhetorical editorializing should be avoided going forward, the record is also clear that the court did not allow this frustration to so influence its decision-making that it was incapable of giving Lenny a fair hearing such that its orders should be reversed or a new judge assigned on remand. *Id.*

¶ 49    Finally, Lenny's claim fails because it is insufficiently supported by legal authority. In fact, Lenny fails to identify a single dissolution of marriage case where a judge's rulings were overturned based on judicial bias. This is with good reason; such examples are exceedingly rare, if in fact any exist, based on this court's research. It was Lenny's burden to support his argument with case law (see Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)), and he failed to do so. Instead, he cites to the well-known cases from the Illinois and United States Supreme Court, which established the general propositions of judicial bias law. In each of these cases, the court emphasized the huge burden the claimant faced, and what an exceedingly rare fact pattern it would take to satisfy that burden, and then denied the claim of bias before it. See *Liteky v. U.S.*, 510 U.S. at 554-56; *Conway*, 2023 IL 127670, ¶¶ 22-27; *Eychaner*, 202 Ill. 2d at 279-81. We follow this guidance and reach the same result; the circuit court judge's language strongly expressed her frustration, but did not show deep-seated antagonism, and did not prevent her from making fair and impartial rulings.

¶ 50                                    II. The Allocation Judgment

¶ 51    Lenny next challenges the circuit court's findings in the Allocation Judgment on (1) summer parenting time, (2) extracurricular activities, and (3) the electronic device access issue.

¶ 52    The first two issues arise from the circuit court's determination of parental responsibilities. In making determinations on both parental decision-making and parenting time, the Illinois Marriage and Dissolution of Marriage Act requires the circuit court to base its decision on the best interests of the child. 750 ILCS 5/602.5 (West 2020); 750 ILCS 5/602.7 (West 2020); *In re Marriage of Hipes and Lozano*, 2023 IL App (1st) 230953, ¶¶ 36-38. "Because the trial court is in the best position to assess the credibility of witnesses and determine the child's best interests, its decision regarding the allocation of parenting time must be accorded great deference." *In re Marriage of Palarz*, 2022 IL App (1st) 210618, ¶ 28. A reviewing court will not reverse a decision

"regarding the allocation of parental responsibilities unless the court abused its considerable discretion, or its decision is against the manifest weight of the evidence." *Id.*

¶ 53 The evidence at trial demonstrated support for both Lenny and Alissa's sides of these issues. Rappoport favored continuing the school year parenting time arrangement in the summer, while Rosenberg believed a 50/50 summer split could benefit the children, provided Lenny and Alissa made efforts to cooperate. Similarly, Rappoport identified that the children enjoyed playing sports, while Rosenberg suggested a limitation. Each parent testified in support of their position, with Alissa expressing concern with overscheduling and fatigue due to Lenny overscheduling the children. Lenny also offered the testimony of friends and neighbors in favor of his ability as a parent to support this argument for increased parenting time.

¶ 54 On this record, we find the circuit court's parenting responsibility conclusions were reasonable, even if the record also would have supported a different finding. It is these specific circumstances why deferential standards of review exist in these cases—the circuit court judge is much more familiar with this case than this court, and was present during the trial to view the witnesses first hand and synthesize that trial testimony with its knowledge of the case to arrive at a conclusion as to what was in M.L. and N.L.'s best interests. *Id.*

¶ 55 Specifically respecting extracurricular activities, the circuit court acknowledged that some activity and participation was a positive but balanced this by incorporating a recommended limitation on it by requiring one sport at a time, with the parents choosing on a rotational basis. This was a reasonable conclusion with support in the record, including from both Rosenberg and Rappaport, meaning the decision had a basis in the record and was not arbitrary or unreasonable such that we can find it was against the manifest weight of the evidence or constituted an abuse of discretion, even if the opposite conclusion also had record support. See *In re Marriage of Bates*,

16

212 Ill. 2d 489, 516 (2004) ("Where the evidence permits multiple reasonable inferences, the reviewing court will accept those inferences that support the court's order.")

¶ 56    Similarly, respecting the summer parenting time decision, the circuit court was again confronted with a scenario where the parties conflicted and there was support in the record for both sides, and it made a reasonable conclusion to continue the school-year parenting time structure. While the 50/50 summer structure may also have been reasonable and was (conditionally) supported by Rosenberg, this does not mean the court's conclusion otherwise was unreasonable. The court concluded that the best interest of the children would be served by continuity, and may well have concluded that the caveat Rosenberg provided was unlikely to be met because Alissa and Lenny showed no likelihood of better cooperation. Again, given our standard of review, we cannot reverse this finding on appeal. *Id.* ("A custody determination, in particular, is afforded 'great deference' because 'the trial court is in a superior position to judge the credibility of the witnesses and determine the best interests of the child.' " (quoting *In re Marriage of Gustavson*, 247 Ill. App. 3d 797, 801 (1993))).

¶ 57    Lenny's final claim arising from the Allocation Judgment is the circuit court's requirement that he provide full access to Alissa for the children's electronic devices. Lenny has refused to abide by some version of this requirement for over four years, apparently up to and including right now, as he was currently under a contempt order for this refusal at the time this court was last updated. He justifies this conduct by arguing that to provide this access, he would have to provide his Apple password, which would give Alissa too much access into his personal affairs.

¶ 58    We first acknowledge that the parties dispute the nature of the circuit court's orders on this issue, with Lenny contending it amounts to a "mandatory injunction," while Alissa contends it is more akin to a discovery order. We find the circuit court's findings on this issue in the Allocation

17

Judgment were just that—an allocation of parental responsibility—and not a separate "mandatory injunction" requiring that Alissa to make some additional showing. The court's finding is that both parents are to share the responsibility to monitor the children's electronic device; this is a reasonable allocation of responsibility and, and most accurately considered a necessary function a parent must carry out given the centrality of electronic devices in modern society. 750 ILCS 5/602.5(b)(1), (2), (4) (West 2020).

¶ 59    We further note that, even if it were a mandatory injunction, our standard of review would still be abuse of discretion, meaning the circuit court's decision would be owed similar (if not exactly the same) level of deference as an allocation of parental responsibility decision. Compare *In re Marriage of Winter*, 2013 IL App (1st) 112836, ¶ 20 ("The decision to grant or deny an injunction rests within the sound discretion of the trial court and on review the decision will not be disturbed absent an abuse of discretion.") with *Palarz*, 2022 IL App (1st) 210618, ¶ 28 (A lower court's decision regarding the allocation of parental responsibilities will not be overturned "unless the court abused its considerable discretion, or its decision is against the manifest weight of the evidence.").

¶ 60    Lenny presents no argument as to why the circuit court's order that he provide Alissa full access was not in the children's best interest and instead argues only that he provided sufficient access in his judgment, and the court and Alissa should simply be satisfied with the access he deemed appropriate. This is an untenable position counter to the fundamental function of the law; the court, not the parties, decides what its orders requires, and a party cannot disobey a court order simply because it does not agree with it. See *In re Marriage of Andrew*, 2023 IL App (1st) 221039, ¶¶ 56-60.

¶ 61    Even if Lenny's argument was worth addressing substantively, it is immediately revealed as facially invalid because it is based on a false premise. It is fallacy that in order for each parent to have equal access and control of the children's devices, Lenny would have to provide Alissa his Apple password. The reality, of course, is that Lenny and Alissa can simply divorce the children's electronic devices from Lenny's preexisting Apple account and create a new account structure, with Lenny and Alissa *both* maintaining control at the highest level from the outset of the account's creation, under which the children's devices will be managed. This structure will effectuate the circuit court's intent, as expressed in the Allocation Judgment, to ensure the best interest of the children will be furthered while not compromising the integrity of Lenny's personal information.

¶ 62    Thus, we affirm the circuit court's finding in the Allocation Judgment that Lenny must supply full access, but vacate any related orders (pre- or post-dating the Allocation Judgment) that specifically required Lenny to provide his Apple password or any other particular type of access, and remand for the court to enter a new order, per the court's findings in the Allocation and Dissolution Judgments, which requires Lenny and Alissa to immediately collaborate on creating a new account under which they both share equal access to the parental control of the children's devices (and Facebook Messenger, and any other device or application). This court is not naïve, however, and we explicitly note that the circuit court should not hesitate to use its powers of indirect civil contempt should Lenny fail to abide by the new order.

¶ 63    This finding obviates Lenny's appeal in case No. 1-25-1003, as that order contains a requirement that is contrary to the remedy fashioned in this order, and as such is vacated. In so ordering, we make no finding as to whether this court would have had jurisdiction to consider the May 6, 2025 order on its own merits. See *Hamilton v. Williams*, 237 Ill. App. 3d 765, 780 (1992). Without reaching the merits of that appeal, however, we do note that on remand, should the circuit

19

court determine it is appropriate to suspend parenting time, Illinois law requires that it find "by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered" the child. 750 ILCS 5/603.10(a) (West 2024).

¶ 64    Finally, we must address the circuit court's order of August 29, 2023, requiring Lenny to pay Alissa $75,700 as a fine for noncompliance with its initial July 15, 2021 order that Lenny provide full access to the children's electronic devices. Based on our finding that remand for a new order is necessary to effectuate the court's intent in the Allocation Judgment, we must vacate the penalty. We further note that the court's order that Alissa was to collect this sum was improper. A court's financial remedy for a party refusing to follow its orders, should it choose that method of enforcement, is a fine levied in relation to an indirect civil contempt finding, and such a fine is payable to the court, not a party. See *Door Properties, LLC v. Nahlawi*, 2023 IL App (1st) 230012, ¶¶ 39-42. "A civil contempt order with an improper purge provision can often be described by another name—a purported civil contempt order that, because of its improper purge provision, has unintentionally morphed into an order of criminal contempt." *Id.* ¶ 38 (citing *Penfield Co. of California v. Security & Exchange Comm'n*, 330 U.S. 585, 592-93 (1947)). It appears that is what happened here--the July 15, 2021 order became an order of indirect criminal contempt. Though civil contempt is coercive and meant to gain compliance, criminal contempt orders are punitive and designed to vindicate the court's authority. Criminal contempt is to punish the contemnors for their previous conduct that cannot be undone. *Id* at  ¶ 40. "Compelling payment of a fixed fine, rather than compliance with the discovery orders, would also stray from coercing future behavior and fall more comfortably into the realm of punishing" for past acts that cannot be undone. *Id*. ¶ 41.

¶ 65                                III. The Dissolution Judgment

¶ 66    Lenny's next claims arise from the Dissolution Judgment, namely: (1) the circuit court's finding that his decision not to accept the $62,500 PRE severance offer constituted dissipation, and (2) the court's award of $200,000 in attorney's fees to Alissa, including $125,000 in interim attorney's fees previously ordered. Lenny also challenges (3) a turnover order, entered against him on March 1, 2023, corresponding to the full proceeds of the sale of the PRE shares the court found were marital property in the Dissolution Judgment.

¶ 67    We begin with dissipation. The circuit court found that Lenny dissipated marital assets by refusing to sign a severance agreement that would have paid him $62,500. Lenny maintains this was error because he was under no obligation to sign the severance agreement, as it required him to waive his right to sue PRE in the future.

¶ 68    In dividing marital property, a circuit court may consider the "dissipation by each party of the marital property." 750 ILCS 5/503(d)(2) (West 2020). Dissipation is "the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown." *In re Marriage of Evanoff and Tomasek*, 2016 IL App (1st) 150017, ¶ 37. When a spouse is accused of dissipation, "The complaining spouse must make a *prima facie* case for dissipation before the burden shifts to the spouse charged with dissipation to demonstrate, with clear and convincing evidence, how the funds were spent." *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 88. The court will find dissipation if the spouse cannot demonstrate the funds were spent for a "legitimate family expense." *Id.* We review a circuit court's dissipation finding under the manifest weight of the evidence standard. *Id.* In conducting this review, the circuit court's factual findings and credibility determinations are entitled to deference, and this court will not substitute its judgment for that of the factfinder on these issues. See *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002).

¶ 69 We find the circuit court's conclusion that Lenny dissipated the marital property in the amount of $62,500 was not against the manifest weight of the evidence. First, Lenny does not contest that Alissa made a *prima facie* case that Lenny failed to collect an available $62,500 which, if collected, would have been considered marital property, or that the issue arose during a time of irretrievable breakdown. Instead, he only claims that the court erred in finding his refusal to sign the severance agreement constituted dissipation because a future lawsuit might increase the marital assets. The issue, then, turned on the court's determination of whether Lenny established by clear and convincing evidence that his intent in refusing to accept the severance offer was an attempt to increase the marital property by maintaining the right to pursue a more valuable legal claim, or if he simply acted to decrease the value of the marital property by $62,500 without a credible explanation. *Budorick*, 2020 IL App (1st) 190994, ¶ 88. The court resolved this issue by finding Lenny did not credibly testify as to an explanation, and instead took a unilateral act to decrease marital property. On this finding, we must defer to the lower court, who was in a better position to judge Lenny's credibility as a witness. *D.F.*, 201 Ill. 2d at 498-99. This fact, combined with the undisputed fact that Lenny never pursued a claim against PRE, means the court based its decision on its own credibility determinations and a reasonable interpretation of the evidence in the record, meaning we cannot find the decision was against the manifest weight of the evidence, and must affirm. *Id.*

¶ 70 Lenny claims his conduct amounted to refusing funds, not spending funds already in the marital estate. This is a distinction without a difference in this context. There is no dispute that due to a unilateral decision by Lenny, the marital property contained 62,500 fewer dollars. Whether that reduction was due to conduct rising to dissipation was a decision within the discretion of the

circuit court, and it made its decision based on grounds supported by the record and its finding that Lenny lacked credibility, a finding, again, to which we must defer.

¶ 71    The next claim arising from the Dissolution Judgment is the circuit court's award of $200,000 in attorney's fees. The circuit court ordered contribution pursuant to Alissa's petition under 750 ILCS 5/503 (West 2020) and 750 ILCS 5/508 (West 2020). Per the latter, "At the conclusion of any pre-judgment dissolution proceeding ***, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subjection (j) of Section 503." 750 ILCS 5/508(a) (West 2020). Subsection (j) reads, in relevant part, "Any award of contribution to one party from the other party shall be based on the criteria for division of marital property." 750 ILCS 5/503(j)(2) (West 2020). That criteria includes the parties' economic circumstances and ability to earn income in the future. 750 ILCS 5/503(d)(5), (11) (West 2020). To justify a contribution award, the spouse seeking the contribution must establish his or her inability to pay the attorney's fees, and the other spouse's ability to pay. *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 99. A court can consider a party's conduct during the litigation in making a contribution award. *In re Marriage of Patel and Sines-Patel*, 2013 IL App (1st) 112571, ¶ 117. A reviewing court defers to the circuit court's credibility findings during a dissolution of marriage trial. See *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 69. We review an attorney's fees contribution award for abuse of discretion. *Sines-Patel*, 2013 IL App (1st) 112571, ¶ 67.

¶ 72    Lenny's primary challenge to the attorney's fee award is that the circuit court incorporated the previous interim fee award of $125,000 into the $200,000, and  the interim award was improper because Alissa did not need monetary assistance to adequately participate in the litigation. In dissolution of marriage proceedings, a circuit court can award interim attorney's fees from one party to another when there is a disparity in funds between the parties, a process commonly

23

described as "leveling the playing field." See *In re Marriage of Patel*, 2013 IL App (1st) 122882, ¶¶ 33-34. The court may base its finding on a number of statutory factors (750 ILCS 5/501(c-1)(1) (West Supp. 2021)), but the core consideration for the court is to determine whether an award is necessary "to enable the petitioning party to participate adequately in the litigation," which requires a finding that "the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees and costs lacks sufficient access to assets or income to pay reasonable amounts." 750 ILCS 5/501(c-1)(3) (West Supp. 2021).

¶ 73 We find the circuit court did not abuse its discretion in awarding Alissa $200,000 in attorney's fees. There is no dispute that Alissa had paid over $400,000 in fees and still owed over $180,000, and that the parties had a wide imputed income disparity, valid considerations for the court in making its award. See 750 ILCS 5/503(d)(5), (11) (West 2020). Schwarz, Alissa's mother, loaned Alissa much of the funding she used to pay the attorney's fees, loans she "definitely" expected to be paid back. The court found Schwarz's testimony credible, a finding to which we must defer. *Stuhr*, 2016 IL App (1st) 152370, ¶ 69. Alissa's need to repay these loans was also a valid consideration in awarding attorney's fees. The law maintains that contribution is appropriate on a showing that forcing the spouse seeking contribution to pay the fees would undermine their financial stability, which the requirement for Alissa to repay the loans to her mother without contribution from Lenny very well may have done. *Shen*, 2015 IL App (1st) 130733, ¶ 99.

¶ 74 Additionally, the court extensively detailed Lenny's conduct throughout the litigation in making its award, another factor the court can consider in contribution. See *Sines-Patel*, 2013 IL App (1st) 112571, ¶ 117. It follows that the court's order of $200,000 in contribution is supported

24

by the record and based on appropriate factors under the law, and thus not subject to reversal for abuse of discretion. *Id.* ¶ 67.

¶ 75    Lenny's argument that interim attorney fees were inappropriate because Alissa had access to Schwarz's funding during the pendency of the litigation does not impact our conclusion. Even accepting Lenny's proposition that the record showed there was no disparity in access to funding that affected Alissa's ability to adequately participate in the litigation, we may affirm on any basis supported by the record, and the record provides more than enough support for the conclusion that $200,000 is a reasonable attorney's fee award, irrespective of the lower court's specific justification for $125,000 of that award. See *Andrew*, 2023 IL App (1st) 221039, ¶ 36.

¶ 76    Next, Lenny takes issue with the circuit court's acceptance of Schwarz's testimony that she expected to be repaid, arguing that because of the familial relationship and Alissa's income level, it is unrealistic that Alissa will repay the loans. This argument fails, however, as again, it is axiomatic that as a reviewing court, we must defer to the lower court's credibility findings. *Stuhr*, 2016 IL App (1st) 152370, ¶ 69.[2] The circuit court was much better positioned than this court to assess Schwarz's credibility on her expectation of repayment. Moreover, the fact that Alissa did not have immediate access to funds, thus necessitating the loans, does not foreclose a finding that Schwarz credibly expected repayment. Schwarz was well aware that dissolution proceedings were ongoing, at the conclusion of which the court could award funds to Alissa with which she could reimburse Schwarz.

---

[22] Lenny briefly references the legal maxim that a transfer from a parent to a child will typically be considered a gift, but provides no argument as to why Schwarz's payments to Alissa's attorneys would fit this characterization, and as such we will not substantively consider the argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 77    Finally, Lenny argues the circuit court's attorney's fees award was improper because, under 750 ILCS 5/508(b) (West 2020), fees assessed against a party for failure to comply with a court's order should be assessed specific to each proceeding, and not generally as part of a contribution award. See *In re Marriage of Gattone*, 317 Ill. App. 3d 346, 359-60 (2000). This argument fails because while the court certainly highlighted Lenny's conduct in its fee award, which included his violation of court orders, the $200,000 was not simply an attempt to compensate Alissa for specific instances of Lenny's disobeying court orders; instead, as the court explained, it was because Lenny generally engaged in conduct that needlessly elongated the litigation, an appropriate consideration for a contribution award. See *Sines-Patel*, 2013 IL App (1st) 112571, ¶ 117.

¶ 78    Lenny's final claim is a challenge to the turnover aspect of the circuit court's March 1, 2023 order. Specifically, the court granted count II of Alissa's emergency petition, which requested the turnover of the full proceeds amount in repayment for funds owed per the Dissolution Judgment. Lenny claims (1) the turnover order constituted error because the court did not have the authority to sign the forms releasing the funds, as it constituted the court improperly waiving Lenny's contractual rights against PRE, and (2) the court should not have awarded Alissa his 50% of the share proceeds.

¶ 79    Though not raised by the parties, we must consider our own jurisdiction *Village of Kirkland v. Kirkland Properties Holding Company*, *LLC I*, 2023 IL 128612, ¶ 37. We find we do not have jurisdiction to review Lenny's claim arising from the turnover aspect of the court's March 1, 2023 order. Per *In re Marriage of Crecos*, 2021 IL 126192, ¶¶ 44-45, a post-dissolution order that is final as to only a subset of the remaining pending issues requires the lower court to make an "express written finding that there is no just reason delaying either enforcement or appeal or both," per Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). There is no doubt from the record that

26

(1) the March 1, 2023 order was a post-dissolution order that contained no Rule 304(a) language, and (2) there were many unresolved issues remaining after entry of the order. Accordingly, we lack jurisdiction to consider the propriety of the court's turnover order and cannot reach Lenny's claim. *Crecos*, 2021 IL 126192, ¶ 45.

¶ 80                                    CONCLUSION

¶ 81    For the reasons stated above, the Allocation Judgment and Dissolution Judgment are affirmed, and the matter is remanded for additional proceedings consistent with this order. On remand, the court will enter a new order executing the Allocation Judgment's electronic device access requirement per this order's instructions.

¶ 82   Affirmed and remanded with instructions.